## Charles E. Vella v. Hartford Vermont Acquisitions, Inc.

[838 A.2d 126]

No. 02-364

Present: Amestoy, C.J., Dooley, Johnson, Skoglund and Reiber, JJ.

Opinion Filed November 21, 2003

*Tim A. Clark* of *DesMeules, Olmstead & Ostler*, Norwich, for Plaintiff-Appellant.

*Wayne R. Young* and *Harold E. Eaton, Jr.* of *Eaton & Hayes, P.C.*, Woodstock, for Defendant-Appellee.

¶ 1. **Dooley, J.** Plaintiff Charles Vella, who suffered a work-related injury for which he collected workers' compensation benefits from his employer, appeals the superior court's order dismissing his tort suit against defendant Hartford Vermont Acquisitions, the owner of the commercial garage leased to his employer. The trial court determined that defendant is a "statutory employer" under 21 V.S.A. § 601(3) and thus immune from the suit filed by plaintiff, whose exclusive remedy is his workers' compensation award. Based on our conclusion that defendant is not a "statutory employer," we reverse the court's judgment and reinstate plaintiff's suit.

¶ 2. In reviewing the superior court's order dismissing plaintiff's suit for failure to state a claim upon which relief can be granted, we assume that plaintiff's factual allegations, and any reasonable inferences that may be drawn therefrom, are true.[1] See *Richards v. Town of Norwich*, 169 Vt. 44, 48-49, 726 A.2d 81, 85 (1999). Plaintiff's employer, a bus company called Premier Coach, leased defendant's commercial garage to wash its buses. Under the lease agreement, defendant agreed to maintain the premises in a safe condition, including keeping it free and clear of ice and snow. While working for his employer at the garage, plaintiff slipped and fell on the ice, and incurred injuries. He received workers' compensation benefits from his employer and filed a negligence action against defendant, claiming that defendant neglected its obligation to keep the premises free and clear of ice.

¶ 3. Defendant moved to dismiss the suit for failure to state a claim, see V.R.C.P. 12(b)(6), arguing that the Workers' Compensation Act's exclusivity provision barred plaintiff's suit because defendant was plaintiff's "statutory employer," as defined by 21 V.S.A. § 601(3). Defendant relies upon the workers' compensation exclusivity provision that prohibits an employee's suit against the employer. See 21 V.S.A. § 622

---

[1] Plaintiff filed a complaint without alleging specifically that defendant had contractually assumed the obligation to clear the ice and snow in its lease with Premier. After the court dismissed the complaint, plaintiff moved to amend to allege specifically that defendant had the duty to remove the ice and snow under its lease. The court denied the motion to amend, ruling that the added allegation did not change the result. Because the court reached the merits with respect to the added language, we treat the complaint as amended for purposes of this decision.

(except as provided in §§ 618(b) and 624, workers' compensation award excludes all other rights and remedies for work-related personal injuries); see 21 V.S.A. § 624(a) (in addition to workers' compensation award, employee may enforce liability of "person other than the employer"). According to defendant, because it had contractually assumed Premier's duty to maintain the safety of plaintiff's workplace, it was also entitled to assume Premier's immunity from suit under § 601(3), which defines "employer" to include "*the owner* or lessee *of premises* or other person *who is virtually the proprietor or operator of the business there carried on,* but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed." (Emphasis added.)

¶ 4. The superior court agreed, ruling that defendant was plaintiff's "statutory employer" because plaintiff had not alleged any negligent acts independent of the employer's nondelegable duty to maintain a safe workplace. Plaintiff appeals, arguing that the trial court's analysis is faulty because, notwithstanding defendant's agreement to maintain the premises in a safe condition, defendant is merely a landlord and not the virtual proprietor or operator of the business carried on by plaintiff's employer. Therefore, according to plaintiff, defendant is not a "statutory employer" entitled to immunity from plaintiff's negligence suit.

¶ 5. Neither party disputes that the clause "who is virtually the proprietor or operator of the business there carried on" contained in § 601(3) modifies not only its immediate antecedent phrase "other person," but also the previous phrase "the owner or lessee of premises." We agree with this construction. The Legislature did not immunize from liability all property owners and lessees, irrespective of their relationship to the direct employer. Indeed, the underlying policy concerns discussed below suggest that the virtual proprietor or operator language applies in any case governed by § 601(3). Hence, we construe the qualifying clause "who is virtually the proprietor or operator of the business there carried on" to modify both the immediate antecedent phrase "other person" and the previous phrase "the owner or lessee of premises."[2] The highest court

---

[2] In *Welch v. Home Two, Inc.*, 172 Vt. 632, 634, 783 A.2d 419, 422 (2001) (mem.), we rejected the claimant's assertion that the general contractor could not literally be considered a virtual operator of the business, stating that the claimant's position "would effectively remove general contractors from the statutory definition of employer *unless they were the owners or lessees of the premises.*" (Emphasis added.) The underlined phrase implies that the "statutory employer" status of owners and lessees under 21 V.S.A. § 601(3) is not limited by the clause "virtually the proprietor or operator of the business." That issue was not before the Court, however, and thus the dicta implied in that case is not controlling precedent here.

in the only other state with a nearly identical statute reached the same conclusion, holding that "'[a] statutory employer does not include the mere owner of the premises, unless the owner is also the virtual proprietor or operator of the business there carried on.'" *Robison v. Bateman-Hall, Inc.*, 76 P.3d 951, 956 (Idaho 2003) (quoting *Harpole v. State*, 958 P.2d 594, 597 (Idaho 1998)).

¶ 6. The two Idaho cases are instructive. In *Harpole*, the state sold the timber rights on its land to the plaintiff's employer. After the plaintiff was injured while logging the land, he collected workers' compensation benefits from his employer and then filed a tort suit against the state. In *Robison*, the plaintiff was injured while repairing a mall roof for an independent contractor hired by a general contractor, who, in turn, was hired by the mall owner. The plaintiff collected workers' compensation benefits from the independent contractor and then sued the general contractor and the mall owner. Recognizing that the expanded statutory definition of employer was designed to prevent employers from avoiding workers' compensation liability by subcontracting work that they could have done themselves, the court concluded in those cases that the landowners had failed to satisfy the "true test" of determining who is a virtual proprietor or operator — whether the work being done by the direct employer could have been done by the party claiming "statutory employer" status. See *Robison*, 76 P.3d at 956-57 (general contractor was "statutory employer," but mall owner who was not in roofing or contracting business was not "statutory employer"); *Harpole*, 958 P.2d at 597-98 (state was not "statutory employer" because it was not in logging business).

¶ 7. We recently reached the same conclusion, holding that the "critical inquiry" in determining whether an indirect employer is a "statutory employer" as defined by § 601(3) "is whether the type of work being carried out by the [direct employer] is the type of work that could have been carried out by the [indirect employer's] employees as part of the regular course of the business." *Edson v. State*, 2003 VT 32, ¶ 7, 175 Vt. 330, 830 A.2d 671. This is the critical inquiry because § 601(3)'s underlying purpose, like the Idaho statute, is "to prevent business owners or general contractors from attempting to avoid liability for workers' compensation benefits by hiring independent contractors to do what they would have otherwise done themselves through their direct employees." *Id.* at ¶ 6.

¶ 8. In this case, it is undisputed that defendant is not in the busing business. Rather, defendant is a commercial landlord and a distinct, separately owned corporation that leases space to Premier, but otherwise

has no ties to Premier and no supervisory control or authority over Premier or its employees. Nonetheless, defendant argues that it is plaintiff's "statutory employer" and therefore entitled to immunity from plaintiff's tort suit because it contractually assumed Premier's duty to maintain a safe premises where plaintiff worked.

¶ 9. We find this argument unpersuasive. Undoubtedly, many commercial landlords contractually assume the obligation to maintain their premises in a safe condition — an obligation that has a common law basis. See *Favreau v. Miller*, 156 Vt. 222, 228, 591 A.2d 68, 72 (1991) (holding that Vermont landlords "may be held liable for exposing their tenants to unreasonable risks of harm in the leased premises, whether or not they retain 'control' of the dangerous condition"). In no way, however, does a landlord become a virtual proprietor or operator of a business, as required by § 601(3), merely by assuming that obligation. Cf. *Batmasian v. Ballachino*, 755 So. 2d 157, 158 (Fla. Dist. Ct. App. 2000) (rejecting argument that mall owner was "statutory employer" by virtue of lease agreement in which owner assumed obligation to maintain premises). If that were the case, virtually every commercial landlord would automatically be the "statutory employer" of their tenants' employees, a position that we have already rejected. In such a scenario, commercial landlords could immunize themselves from tort suits merely by assuming duties — even their common law duties — in lease agreements to which the tenants' employees were not parties. Cf. *Tanguay v. Marston*, 503 A.2d 834, 838 (N.H. 1986) (master erred in holding that suit against commercial landlord was barred by workers' compensation exclusivity provision; although lessor and lessee may agree in commercial lease agreement as to which party will maintain leased premises, exculpatory clauses in lease agreements have no effect on nonsigners, such as tenant's employees).

¶ 10. Plainly, the Legislature never intended § 601(3) to sweep so broadly. As noted, § 601(3) was intended to prevent indirect employers from avoiding workers' compensation liability by hiring out work that they would have otherwise done themselves. Generally, such incentives do not exist in the context of a commercial lease arrangement when the lessor is uninvolved in the lessee's business. Cf. *Robison*, 76 P.3d at 958 (property owners engaged in same type of business as general contractors or subcontractors hired to work on their property have greater incentive to avoid workers' compensation liability).

¶ 11. Defendant maintains, however, that, by agreeing to keep its premises safe, it assumed Premier's duty to provide a safe workplace, and thus is immunized from tort suits under our previous case law holding that workers' compensation is the exclusive remedy when the injury

arose from a breach of the duty to provide a safe workplace. See *Garrity v. Manning*, 164 Vt. 507, 512-13, 671 A.2d 808, 811 (1996) (adopting "Wisconsin rule," under which worker who receives workers' compensation benefits is barred from suing individual officers, directors, or stockholders for conduct that amounts to breach of corporate employer's duty to provide safe workplace); see also *Gerrish v. Savard*, 169 Vt. 468, 472, 739 A.2d 1195, 1198 (1999) ("Wisconsin rule" examines nature of duty involved to determine whether negligent act was committed in capacity of employer or whether there is co-employee liability); *Dunham v. Chase*, 165 Vt. 543, 544, 674 A.2d 1279, 1280 (1996) (mem.) (to impose liability upon corporate officer, plaintiff must allege more than breach of corporate duty to provide safe workplace).

¶ 12. For at least two reasons, we reject this argument. First, the cases that defendant relies upon adopted a rule applied in the context of suits against corporate officers, employees, or shareholders of the employer that provided workers' compensation benefits. In those cases, we determined the circumstances under which persons directly involved in the business operation could be sued by an injured employee who had collected workers' compensation benefits from the business. We held that to avoid the employer's immunity the plaintiff must show that the duty owed by the defendant officer or employee of the business was a "personal duty" independent of the "corporate duty to maintain a safe workplace." *Dunham*, 165 Vt. at 544, 674 A.2d at 1280; see *Gerrish*, 169 Vt. at 472, 739 A.2d at 1198 ("To establish co-employee liability, the plaintiff must show that there was a personal duty owed the plaintiff apart from the nondelegable duties of the employer."); *Garrity*, 164 Vt. at 513, 671 A.2d at 811 (employee may recover against officer or supervisor of employer after collecting workers' compensation benefits only when officer or supervisor breaches personal duty rather than duty owed primarily to employer).

¶ 13. In contrast, the instant case does not concern a suit against someone directly involved in the employer's business operations. Nor does this case present the danger of double recovery against the employer, a policy concern in cases involving tort suits against corporate officers or co-employees. See *Gerrish*, 169 Vt. at 472, 739 A.2d at 1198 (policy rationale behind Wisconsin rule is "to prevent double recovery against employers"); *Garrity*, 164 Vt. at 512, 671 A.2d at 811 ("To the extent such [a tort] suit is maintained against an officer, director or stockholder for an accident arising out of unsafe conditions at the place of employment, the corporation is often required to indemnify, imposing double liability on the employer in most cases."). Thus, *Gerrish*, *Dunham*, and *Garrity* are

not controlling under the circumstances of this case. Those cases do not bestow immunity upon commercial landlords from tort suits claiming that the landlords failed to maintain their premises in a safe condition for their tenants' employees.

¶ 14. Second, even assuming that our prior case law on co-employee liability governed this case, defendant would not be immune from suit. We are not persuaded that defendant's duty to maintain the premises is the same as Premier's duty to provide a safe workplace for its employees. In fact, it is the kind of independent, personal duty that is inconsistent with the status of a "virtual employer." While there certainly is overlap between the employer's duty and the landlord's duty, the duty assumed by defendant is both underinclusive and overinclusive when compared to Premier's duty to provide a safe workplace. Any duty that arises from defendant's contractual obligation to maintain the premises is not limited to employees. In that sense, defendant's duty is broader than the employer's duty to provide a safe workplace. On the other hand, defendant's duty to maintain the premises is narrower in the sense that Premier's duty to provide a safe workplace includes every aspect of the workplace. See 21 V.S.A. § 223(a) (defining employer's duties); *Gerrish*, 169 Vt. at 473, 739 A.2d at 1199 (employer's duty includes providing "safe tools and equipment" and is involved when piece of granite being hoisted by crane fell onto plaintiff). Further, defendant's duty to maintain the premises in a safe condition arises from independent sources — its common law duty and its lease contract with the employer.

¶ 15. In sum, we conclude that defendant was not "virtually the proprietor or operator of the business" carried on by Premier at defendant's premises, and thus is not a "statutory employer," as defined in 21 V.S.A. § 601(3). Accordingly, we reverse the superior court's order dismissing plaintiff's complaint.

*Reversed and remanded.*