2011 VT 8

**Dawn ARNOLD, Individually and as Executor of the Estate of Steven Arnold, Owen Arnold and Ivy Arnold v. Raymond E. PALMER and Charles T. Shea, Co-Trustees, Gertrude M. Palmer and Charles T. Shea, Co-Trustees, Pamela P. Hanley, and C-P Burlington Properties, LLC**

[19 A.3d 592]

No. 09-430

¶ 1. January 31, 2011. This case arises from a wrongful death and survival action brought by the estate and survivors of Steven Arnold. Mr. Arnold died from cancer after exposure to formaldehyde in defendant landowners' building. He collected workers' compensation benefits for this injury from his employer, Corbin & Palmer, Inc. His estate and survivors subsequently brought the present action against defendant landowners. The trial court granted summary judgment for the defendant landowners, holding that plaintiffs' exclusive remedy was Mr. Arnold's workers' compensation award because landowners were "statutory employers" under 21 V.S.A. § 601(3) and thus immune from suit. Because we find that landowners are not "statutory employers," we reverse the trial court's judgment and reinstate plaintiffs' action.

¶ 2. In reviewing the superior court's order granting defendants' motions for summary judgment, we apply the same Rule 56 standard as the trial court, viewing the facts in the light most favorable to plaintiffs, the nonmoving parties. See *Robertson v. Mylan Labs., Inc.*, 2004 VT 15, ¶ 15, 176 Vt. 356, 848 A.2d 310; see also V.R.C.P. 56.

¶ 3. Mr. Arnold was employed as a funeral director at Corbin & Palmer, Inc., which conducts its business on leased

property. During the relevant time period, the property was owned and leased by three successive entities that collectively make up the defendants in this suit. From 1992 to 2001, it was owned by two trusts, The Raymond E. Palmer Trust and The Gertrude M. Palmer Trust (Palmer Trusts). The Palmer Trusts leased the property to Corbin & Palmer throughout this time. Raymond Palmer was an employee of Corbin & Palmer until 2002. In January 2002, the Palmer Trusts conveyed the property to Pamela Hanley. Ms. Hanley, in turn, conveyed the property to a single-member limited liability corporation, C-P Burlington Properties, LLC, of which she was the sole member. Ms. Hanley has worked as a licensed funeral director for Corbin & Palmer since 1982. She was president of Corbin & Palmer for several years in the 1980s and has been president and treasurer since January 2002. As of 2003, Ms. Hanley owned 95% of the shares of Corbin & Palmer.

¶ 4. A large part of Mr. Arnold's work involved embalming bodies, which entailed exposure to many chemicals, including formaldehyde. The embalming room also served as Mr. Arnold's de facto office, where he would perform wax work, cosmetology, dressing and casketing, and make phone calls. The sole window in the embalming room was sealed and never opened.

¶ 5. When Mr. Arnold began working at the property, the embalming room was ventilated by a fan in the ceiling. At some point, this system was reconfigured so that the vent was on the floor. After this modification, the fan often failed to work, being out of commission as much as half of the time.

¶ 6. On more than one occasion, Mr. Arnold gave written notice to Ms. Hanley that the ventilation system was broken and needed to be fixed. Stephen Gregory, who worked in the embalming room, also complained several times to Ms. Hanley

about the ventilation system and requested it be fixed. Ms. Hanley had been personally present in the embalming room during periods when the system was not working.

¶ 7. From around 2000 to 2003, Mr. Arnold experienced watery eyes, a burning throat, and a runny nose from the smell of the embalming fluids. He began a course of diagnosis and treatment, starting with his primary care physician and progressing to an ear, nose, and throat specialist. Ultimately, his physicians identified a cancerous tumor as the cause of his discomfort. This tumor was most likely caused by his exposure to formaldehyde and other embalming fluids at landowners' property.

¶ 8. On the basis of these facts, Mr. Arnold pursued a workers' compensation claim against his employer, Corbin & Palmer, for his work-related injury. That claim was settled in July 2006. Mr. Arnold succumbed to his cancer in November 2006. His surviving family and his estate then filed a separate premises liability claim against the various landlords who leased the subject property to Corbin & Palmer.

¶ 9. Plaintiffs have sued defendants in their capacity as landlords only. Despite this fact, defendants argue that plaintiffs' premises liability claims are barred by the exclusivity provisions of the Vermont Workers' Compensation Act, 21 V.S.A. § 622, and claim that they were Arnold's "statutory employers" as defined in 21 V.S.A. § 601(3). Under the Act, a workers' compensation award excludes all other rights and remedies for an employee's work-related personal injuries *against his employer*, 21 V.S.A. § 622 (emphasis added), but an employee may bring suit against a "person *other than* the employer." 21 V.S.A. § 624(a) (emphasis added). A "statutory employer" is one who, although not the direct employer, is nevertheless the "virtual proprietor or operator of the business there carried

on." *Vella v. Hartford Vt. Acquisitions, Inc.*, 2003 VT 108, ¶ 5, 176 Vt. 151, 838 A.2d 126 (quotation omitted). Thus, the pertinent question is whether defendants, acting in their capacity as landlords, were the virtual proprietors of the Corbin & Palmer funeral home business such that they should be exempt from tort liability under the workers' compensation statutes.

¶ 10. We addressed this same question in *Vella*. In that case, an employee of a bus company was injured when he slipped and fell on ice in a leased bus garage. The employee collected workers' compensation benefits from his employer for his injuries and then brought a tort suit against the owner of the commercial garage, who leased the space to his employer. The landlord argued it was immune from tort liability as a statutory employer under 21 V.S.A. § 601(3). We explained that the

> critical inquiry in determining whether an indirect employer is a "statutory employer" as defined by § 601(3) is whether the type of work being carried out by the direct employer is the type of work that could have been carried out by the indirect employer's employees as part of the regular course of the business.

*Vella*, 2003 VT 108, ¶ 7 (quotations omitted). This reasoning is correct because the goal of the statute is "to prevent indirect employers from avoiding workers' compensation liability by hiring out work that they would have otherwise done themselves." *Id.* ¶ 10. We held that because the landlord was not in the busing business, but rather was "a distinct, separately owned corporation" engaged in the business of leasing property, it was not a "statutory employer." *Id.* ¶ 8.

¶ 11. The situation here is similar. Defendant CP-Burlington Properties is a separate entity from Corbin & Palmer and is sued solely in its capacity as a landowner in the business of leasing this property. Similarly, the remaining defendants are sued solely in their capacities as owners and lessors of the property. Nothing in the record demonstrates that defendants, in their capacity as property owners, were ever engaged in the funeral home business. While Ms. Hanley and Mr. Palmer also served as employees of the funeral home business, they were sued only in their capacities as owners and operators of a wholly separate commercial leasing business. The fact that the landlord entities and the funeral home business had overlapping personnel is not dispositive. Because defendants, in their capacities as landowners, were in no way engaged in the funeral home business, we find they are not the virtual proprietors of Corbin & Palmer, Inc., and thus not statutory employers.

¶ 12. Landowners argue that even if plaintiffs' suit is not exempt under the workers' compensation laws, landowners nevertheless lacked any duty to maintain or repair the ventilation system because they had no control over the system. Further, they argue that it was Corbin & Palmer's duty to provide a safe workplace for its employees. We have held that Vermont landlords "may be held liable for exposing their tenants to unreasonable risks of harm in the leased premises, whether or not they retain 'control' of the dangerous condition." *Favreau v. Miller*, 156 Vt. 222, 228, 591 A.2d 68, 72 (1991). We also explicitly held in *Vella* that "[w]hile there certainly is overlap," a landlord's duty to maintain the premises is not the same as an employer's duty to provide a safe workplace for its employees. 2003 VT 108, ¶ 14. A landlord's duty to maintain the premises is an "independent, personal duty." *Id.*

¶ 13. Because we conclude that landowners were not the virtual proprietors or operators of Corbin & Palmer, Inc., and thus not statutory employers, we reverse the superior court's order.

*Reversed and remanded.*

¶ 14. **Morse, J.** (Ret.), Specially Assigned, dissenting. To exist in "virtual" form means "in effect or essence though not in actual fact, form or name." Webster's II New Riverside University Dictionary 1290 (1984).

¶ 15. Although defendant landowners in this case — two trusts and a limited liability corporation — have separate legal identities from the employers that created them, they are separate in "form or name" only. Hence, they fall squarely within the statutory definition of "employer" under the Workers' Compensation Act, as the

> owner . . . of premises . . . who is *virtually* the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed.

21 V.S.A. § 601(3) (Emphasis added.) Defendants here were decedent's employer in all but name, and as such should be immune from suit under the exclusive remedy provision of the Act for injuries he sustained in the course of employment. Accordingly, I would affirm the judgment of the trial court, which reached the same conclusion in a thorough and persuasive decision.

¶ 16. The material facts are undisputed. Raymond Palmer and several family members owned a funeral home business, and the property where it operated, for over sixty years. In 1992, Raymond and his wife Gertrude transferred ownership of the property to two trusts — the Raymond Palmer Trust and the Gertrude Palmer Trust — which leased the property back to the business. In January 2002, Raymond's daughter, defendant Pamela Hanley, acquired the business and property and continued the same lease arrangement. Later that year, Hanley conveyed the property to a separate entity, defendant C-P Burlington Properties, LLC, a single member limited liability corporation of which Hanley is the sole member, which maintained the same lease agreement.

¶ 17. The record thus leaves no doubt that the owners of the funeral home business and the owners of the funeral home property are "virtually" the same. Indeed, if these circumstances do *not* establish "virtual" employer status for workers' compensation purposes, it is difficult to imagine what would.

¶ 18. The Court holds otherwise based on a line of decisions, culminating with *Vella v. Hartford Vermont Acquisitions, Inc.*, 2003 VT 108, 176 Vt. 151, 838 A.2d 126, that is simply inapposite. These cases instruct that the critical inquiry in determining whether a defendant meets the definition of a "virtual" employer is whether the work carried out by the direct employer is the kind that would have been performed by the defendant but for the fact that the work was subcontracted out. See *Edson v. State*, 2003 VT 32, ¶ 6, 175 Vt. 330, 830 A.2d 671 (observing that "virtual employer" statute generally applies where business owners "hire[] independent contractors to do what they would otherwise have done themselves"). Thus, *Edson* held that the State Department of Liquor Control was the "virtual" employer of a driver employed by a trucking company that contracted with the State because the driver was injured "while engaged in the State's business of distributing liquor to its local agencies." *Id.* ¶ 9; see also *In re Chatham Woods Holdings, LLC*, 2008 VT 70, ¶ 12, 184 Vt. 163, 955 A.2d 1183 (holding that real estate development company that also engaged in construction and sale of residential units was statutory employer of construction subcontractor's employees because "services contracted for were plainly a part of . . . its business" (quotation omitted)); *Frazier v. Preferred Operators, Inc.*, 2004 VT 95, ¶ 10, 177 Vt. 571,

861 A.2d 1130 (mem.) (holding that owner of lumber yard was statutory employer of truck driver injured on its premises where trucking-company employer was performing various phases of lumber yard's normal business).

¶ 19. In *Vella*, the Court applied these principles to hold that a commercial landlord which leased a garage to the direct employer — a bus company called Premier Coach — was not the statutory employer of a bus driver injured on the premises. 2003 VT 108, ¶ 15. Although the defendant in *Vella* — like defendants here — owned the property and leased it to the direct employer, there any similarity to this case ends. As *Vella* cogently explained, the "defendant [was] not in the busing business" but instead was "a commercial landlord and a distinct, separately owned corporation that leases space to Premier, but otherwise has no ties to Premier and no supervisory control or authority over Premier or its employees." *Id.* ¶ 8. The facts here are entirely different. Defendants are not "distinct, separately owned" entities with "no ties" to the funeral-home employer, but are indistinguishable from, and intertwined with, the funeral home in every respect save for their legal forms. Unlike *Vella*, moreover, where the defendant landlord operated a commercial-leasing business entirely independent of its bus-company tenant, nothing in the record here suggests that defendants operated *anything*; they are simply legal shells established by the funeral-home employer to collect rent and provide certain tax advantages. The same trustees and principals that formed and comprise defendants also run the funeral-home business and exercise complete control and authority over its operations. They are identical in all but form and thus fully meet the definition of virtual employer.[*]

---

[*] Other courts have similarly concluded that legal form must yield to practical

¶ 20. This Court has held that the purpose of workers' compensation "is to provide employees with a remedy independent of proof of fault, and employers with a limited and determinate liability," and "[t]o effectuate this purpose we favor an 'all embracing' definition of employee and employer where such a construction is reasonable." *In re Chatham Woods*, 2008 VT 70, ¶ 9 (quoting *Fotinopoulos v. Dep't of Corr.*, 174 Vt. 510, 512, 811 A.2d 1227, 1229 (2002) (mem.)). In applying this policy, furthermore, the Court has been careful to recognize "the realities of running a small business," *Gerrish v. Savard*, 169 Vt. 468, 473, 739 A.2d 1195, 1199 (1999), realities which frequently result in precisely the sort of dual-entity employer presented here, where one owns the busi-

---

substance in such circumstances. See, e.g., *Jackson v. Gibson*, 409 N.E.2d 1236, 1238-39 (Ind. Ct. App. 1980) (holding that workers' compensation statute barred plaintiff's negligence action against property owner who was also the principal owner of plaintiff's employer); *Heritage v. Van Patten*, 453 N.E.2d 1247, 1248 (N.Y. 1983) (concluding that exclusive remedy provision of workers' compensation act barred injured employee from suing owner of building who was also plaintiff's employer, since "[r]egardless of his status as owner of the premises where the injury occurred," in reality the owner's status remained unchanged "in his relations with plaintiff in all matters arising from and connected with their employment"); *Braham v. Country Life Realty Co.*, 801 N.Y.S.2d 110, 112 (App. Div. 2005) (holding that "the employee is precluded from bringing an action against the employer in its capacity as a property owner for job-related injuries sustained while working on the employer's premises, since the obligation to provide a safe workplace simply cannot be separated in a logical and orderly fashion from the duties owed by the employer to his employees" (quotation omitted)).

ness and the other the land on which it operates, but with no substantive difference. In looking solely to the legal form of ownership and ignoring the substance of authority and control, the Court here departs from these sound policies. The legal effect of the Court's holding is to eliminate the fact-based test for determining virtual-employer status set forth in *Vella* and to substitute instead a short-cut to tort liability by label. The practical effect is to create a real risk of double recovery against the employer, a result this Court has in the past scrupulously sought to avoid. See, e.g., *Garrity v. Manning*, 164 Vt. 507, 510, 671 A.2d 808, 810 (1996) (citing the policy of avoiding "double recovery against the employer" in holding that corporation's principal officer and stockholder was immune from suit under the workers' compensation statute). I discern no sound reason to reach such a result and therefore respectfully dissent.

¶ 21. I am authorized to state that Justice Burgess joins this dissent.

Motion for reargument denied February 28, 2011.