2012 VT 94

**Michael HEMOND and Tracey Hemond v. FRONTIER COMMUNICATIONS OF AMERICA, INC. f/k/a Citizens Communications Company, d/b/a Citizens Energy Services, Vermont Electric Power Company, Inc., et al.**

[59 A.3d 766]

No. 12-006

¶ 1. November 7, 2012. Defendant, Frontier Communications of America, Inc. ("Frontier"), formerly known as Citizens Communications Company ("Citizens"), appeals, interlocutorily, the trial court's denial of its summary judgment motion in this personal injury claim. Defendant asserts that because the allegedly negligent act that ultimately led to plaintiff's injury occurred at a time in the past, when plaintiff was its employee, it is protected by workers' compensation exclusivity. We affirm.

¶ 2. Plaintiffs, Michael and Tracey Hemond, filed a personal injury claim on account of an electrocution injury Mr. Hemond suffered in September 2006, while he was working as a lineman for the Vermont Electric Cooperative, Inc. ("VEC"). The underlying facts are as follows.

¶ 3. In 2000, Mr. Hemond began working for Frontier as an apprentice lineman.[*] In 2002, Frontier submitted a plan to the Vermont Public Service Board for reconstruction of the Richford substation, which included the installation of a new switch known as Switch 14E. In their personal injury claim, plaintiffs allege that Frontier was responsible for initiating the reconstruction of the Richford substation, and that the reconstruction of the substation and Switch 14E were done in accordance with design specifications and plans developed by Frontier and its contractors.

¶ 4. Around April 2004, Frontier sold its energy-related assets, including the Richford substation and Switch 14E, to VEC. Plaintiffs alleged that by the time of this sale, the design specifications and plans developed by Frontier for the Richford substation were in place, and the reconstruction was already underway. Mr. Hemond kept his job as a lineman with Frontier until VEC bought Frontier. At that time, Mr. Hemond became an employee of VEC without having to apply for a job.

¶ 5. In their personal injury case, plaintiffs alleged that in September 2006 Mr. Hemond, who was then working as a lineman for VEC, was ordered to open switch 14E. When he flipped the switch, he was electrocuted, and he suffered extensive burn injuries, resulting in partial amputations of both his legs.

¶ 6. Mr. Hemond received workers' compensation benefits from VEC in connection with this work injury.

¶ 7. In their personal injury suit, plaintiffs allege that Frontier owed a duty of reasonable care to foreseeable users of the Richford substation, including Mr. Hemond, and that in its redesign of the Richford substation Frontier failed to select switches that were safe and appropriate for the anticipated use.

¶ 8. Frontier filed a motion for summary judgment asserting workers' compensation exclusivity pursuant to 21 V.S.A. § 622. The trial court denied the motion, as well as Frontier's motion to reconsider. This Court granted leave for interlocutory appeal.

---

[*] Named defendant Frontier is the successor corporation to Citizens. Citizens, not Frontier, was actually Mr. Hemond's prior employer. However, to avoid confusion, we substitute Frontier for Citizens throughout our opinion.

¶ 9. The exclusivity clause of Vermont's workers' compensation law states:

> Except as provided in . . . section 624 of this title, the rights and remedies granted by the provisions of this chapter to an employee on account of a personal injury for which he or she is entitled to compensation under the provisions of this chapter shall exclude all other rights and remedies of the employee . . . at common law or otherwise on account of such injury.

21 V.S.A. § 622.

¶ 10. One of the statutory exceptions to this general rule is set forth in 21 V.S.A. § 624(a), which states:

> Where the injury for which compensation is payable under . . . this chapter was caused under circumstances creating a legal liability to pay the resulting damages in some person other than the employer; . . . the injured employee . . . may also proceed to enforce the liability of such third party for damages in accordance with the provisions of this section.

The question on appeal is whether in this case Frontier is "some person other than the employer" subject to liability.

¶ 11. Vermont's workers' compensation law states: "If a worker receives a personal injury by accident arising out of and in the course of employment by an employer . . . , the employer . . . shall pay compensation" in the specified amounts. 21 V.S.A. § 618(a)(1). We accordingly determine the identity of the employer in connection with a given work injury with reference to the context of the injury.

¶ 12. Our first question is whether the injury at issue here arose out of and in the course of Mr. Hemond's employment with Frontier. We cannot say that it did. Frontier sold its energy-related assets to VEC in 2004. Thereafter, it was not in the business any longer, and Mr. Hemond had no relationship with Frontier beyond that of a former employee. Two years later, in the course of his employment with VEC, Mr. Hemond was electrocuted. Mr. Hemond was not injured "in the course of [his] employment" with Frontier by any stretch of logic, and Frontier is not his employer for the purposes of this workers' compensation claim. Rather, Frontier is "some person other than the employer." *Id.* § 624(a).

¶ 13. Frontier contends that our determination of whether a particular defendant is "some person other than the employer" for purposes of § 624(a) turns on the nature of the duty at issue and argues that we should treat Frontier as Mr. Hemond's employer because the duty giving rise to plaintiffs' claim was essentially Frontier's nondelegable duty to provide a safe workplace. This argument fails for several reasons.

¶ 14. First, Frontier's characterization of the applicable law is simply wrong. The threshold question in the § 624(a) analysis is whether the injury in question arose out of and in the course of employment with a particular employer. We have extended the employer's cloak of immunity with reference to the nature of the duty at issue, or to the nature of the employer's business, in two contexts, neither of which is germane to this case.

¶ 15. In one set of cases relied upon by Frontier, we have considered whether and under what circumstances a supervisory co-employee of an injured worker, employed by the same employer, is protected by the employer's cloak of immunity. In *Garrity v. Manning*, an injured worker sued the corporate employer's president and majority stockholder for negligently failing to sand a snow- and ice-covered parking lot. 164 Vt. 507, 508, 671 A.2d 808, 808 (1996). The plaintiff

argued that the employer, a corporation, was protected by the exclusivity bar, but that the defendant, as an individual whose negligence caused injury, was not. In assessing whether the president could be held liable in his capacity as a co-employee, we adopted a "nature of the duty" test pursuant to which a supervisor may be subject to a personal injury action by an injured co-worker for breaching a personal duty owed to the co-worker in connection with a workplace injury, but is protected by the employer's statutory immunity when the duty allegedly breached is the employer's own nondelegable duty to provide a safe workplace. *Id.* at 513, 671 A.2d at 811; see also *Chayer v. Ethan Allen, Inc.*, 2008 VT 45, ¶ 24, 183 Vt. 439, 954 A.2d 783 (affirming dismissal of negligence claims against co-employees where plaintiff's allegations alleged "nothing beyond a breach of the employer's nondelegable duty to maintain a safe workplace"); *Gerrish v. Savard,* 169 Vt. 468, 474, 739 A.2d 1195, 1200 (1999) (to qualify as "other than the employer," co-employee must not be exercising managerial prerogatives or performing employer's nondelegable duty "because both of these activities indicate that the individual is acting as an employer"). More recently, we expressly extended the "nature of the duty" analysis set forth in *Garrity* to cases involving nonowner supervisory employees. *Garger v. Desroches,* 2009 VT 37, ¶ 5, 185 Vt. 634, 974 A.2d 597 (mem.) (explaining that "the supervisory employee is the representative of the employer" so the rationale underlying the "nature of the duty" test applies regardless of whether the supervisory employee is also an owner (quotation omitted)).

¶ 16. This line of co-employee cases is inapplicable here. There is no question that Frontier is not a representative of VEC, which is Mr. Hemond's employer for the purposes of his workers' compensation claim. And there is no question that the supervisory co-employee line of cases does not apply directly to this case in which a corporation that had no relationship with the employer at the time of Mr. Hemond's injury seeks to avail itself of the employer's immunity.

¶ 17. Further, as we have said before, we decline to extend the supervisory co-employee analytical framework to this distinct type of case. The rationale underlying the co-employee cases — that the supervisory co-employee represents the employer, and is a person through whom the employer discharges its nondelegable duty to maintain a safe workplace — does not apply here. Moreover, there is no risk in this setting, as there is in the context of a claim against a supervisory employee, that the employer, by virtue of its indemnification obligations, will find itself effectively liable for workers' compensation benefits *and* tort damages on account of the same injury. See *Vella v. Hartford Vt. Acquisitions, Inc.,* 2003 VT 108, ¶ 13, 176 Vt. 151, 838 A.2d 126 (declining to extend "nature of the duty" test beyond supervisory co-employee situation to claim against someone not directly involved in the employer's business operations).

¶ 18. In *Vella,* we considered whether a lessor of a commercial garage should be treated as the employer of a worker employed by the bus company that leased the garage from the lessor. Defendant points to language in our opinion in that case suggesting that in our analysis we asked whether the nature of the duty to provide safe premises allegedly breached by the lessor was the same as the lessee/employer's nondelegable duty to maintain a safe workplace, and urges us to adopt the same analysis here. See *id.* ¶¶ 11-14. However, defendant's characterization of the pertinent discussion is incomplete. As noted above, we began by expressly declining to apply the "nature of the duty" test outside of the supervisory co-employee context. *Id.* ¶¶ 12-13. After doing so, we concluded that *even if* we applied

our prior case law on co-employee immunity to the facts of the *Vella* case, the defendant in that case would *still* be subject to suit because the nature of the duty allegedly breached by the lessor of the commercial garage was not the same as the employer's duty to maintain a safe workplace. *Id.* ¶ 14. *Vella* specifically rejected application of the "nature of the duty" test beyond the supervisory co-employee context — the same kind of extension that defendant advocates here.

¶ 19. In a second class of cases, so-called "statutory employer" cases, we have considered whether a party who is not the injured worker's immediate employer nonetheless qualifies as an employer for purposes of workers' compensation liability and the accompanying tort immunity. We have done so because the statutory definition of "employer" includes entities that may not qualify as an injured worker's employer at common law. Specifically, § 601(3) provides that "employer" includes "the owner or lessee of premises or other person who is virtually the proprietor or operator of the business there carried on, but who, by reason of there being an independent contractor or for any other reason, is not the direct employer of the workers there employed." Frontier concedes that it was not the "virtual proprietor" of the Richford substation at the time of Mr. Hemond's injury, does not contend that it had any kind of contractual relationship with Mr. Hemond or VEC at the time he was electrocuted, and does not assert that it is entitled to immunity on the ground that it is a statutory employer. None of Frontier's arguments overcome the fact that Mr. Hemond's injury did not arise out of and in the course of his employment with Frontier.

¶ 20. Frontier's argument fails for a second reason. Even if we did define the universe of individuals and entities entitled to invoke workers' compensation exclusivity solely with reference to the nature of the duty underlying a plaintiff's claim — a position we expressly reject — defendant would still be subject to suit. The duty underlying these plaintiffs' claims — Frontier's duty to foreseeable users of the substation to take reasonable care in its redesign — is *not* the same as the duty it had at the time it was operating the substation to provide a safe workplace to its employees, including Mr. Hemond. See *Vella*, 2003 VT 108, ¶ 14. Mr. Hemond's prior employment with Frontier is not an element of his personal injury claim; his claim is no different than a hypothetical claim brought by a brand new lineman hired by VEC in 2005, with no history of employment with Frontier. Just as we have recognized that a landlord's duty to maintain safe premises is not the same as an employer's duty to maintain a safe workplace, the duty of care a designer of electrical substations owes to foreseeable users is not the same as an employer's duty to maintain a safe workplace. See *Arnold v. Palmer*, 2011 VT 8, ¶ 12, 189 Vt. 608, 19 A.3d 592 (mem.) ("[W]hile there certainly is overlap, a landlord's duty to maintain the premises is not the same as an employer's duty to provide a safe workplace for its employees." (quotation omitted)). Not only is the "nature of the duty" test not as broadly applicable as Frontier urges, but the test does not accomplish Frontier's desired goal in this case.

¶ 21. Frontier argues that if Mr. Hemond had been electrocuted at the Richford substation when Frontier still owned the facility and employed Mr. Hemond, it would unquestionably be liable for workers' compensation benefits and immune from tort liability; its change in status from Mr. Hemond's employer to his former employer, and the mere passage of time between the time it redesigned the Richford substation while employing Mr. Hemond and the time he was electrocuted are, Frontier contends, inconsequential. Under our workers' com-

pensation statute, the change in Frontier's status relative to Mr. Hemond makes all the difference in the world. Had he been electrocuted while still employed by Frontier, his injury would have arisen "out of and in the course of" his employment with Frontier. § 618(a)(1). But he was not, and the fact that Frontier was not Mr. Hemond's employer at the time of his electrocution defeats its claim that it was his employer for purposes of workers' compensation benefits and associated immunity.

¶ 22. The fact that Frontier engaged in the conduct that ultimately led to Mr. Hemond's injury at a time when he was employed by Frontier does not change our analysis. The identity of the employer subject to workers' compensation liability and the accompanying immunity is determined with reference to the claimant's injury, not the underlying tortious act. *Id.* (stating employers are subject to workers' compensation obligations in connection with injuries that "arise out of and in the course of" employment).

*Affirmed.*