2015 VT 67











Hemond v. Frontier Communications
of America, Inc., Citizens Communications Company, Inc., Citizens Energy
Services, Vermont Electric Power Company, Inc. v. Stantec Consulting, Inc.,
Stantec Consulting Corp., Inc., Stantec Consulting Services, Inc., Dufresne
Henry, Navigant Consulting, Inc. Turner Electric Corp., Turner Electric, LLC,
Graybar Electric Co., Inc. (2014-236)

 

2015 VT 67

 

[Filed 17-Apr-2015]

 

NOTICE:  This opinion is
subject to motions for reargument under V.R.A.P. 40 as well as formal revision
before publication in the Vermont Reports.  Readers are requested to
notify the Reporter of Decisions by email at: JUD.Reporter@state.vt.us or by
mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont
05609-0801, of any errors in order that corrections may be made before this
opinion goes to press.

 

 


 
 
 2015 VT 67
 
 


 


 
 
 No. 2014-236
 
 


 


 
 
 Michael Hemond and Tracey Hemond
 
 
 
 Supreme Court
 
 
 
 
  
 
 
  
 
 
 
 
  
 
 
 On Appeal from
 
 
 
 
      v.
 
 
 Superior Court, Chittenden
 Unit,
 
 
 
 
  
 
 
 Civil Division
 
 
 
 
  
 
 
  
 
 
 
 
 Frontier Communications of
 America, Inc., 
 f/k/a Citizens Communications Company, 
 d/b/a Citizens Energy Services, Vermont
 Electric Power Company, Inc.
 
 
 January Term, 2015
 
 
 
 
  
      v.
  
 Stantec Consulting, Inc., Stantec Consulting 
 Corporation, Stantec Consulting Services, Inc.,
 f/k/a Dufresne Henry, Navigant Consulting Inc., 
 Turner Electric Corporation, Turner Electric, LLC, Graybar
 Electric Company, Inc.
  
 
 
  
 
 
 
 
 Matthew
 I. Katz, J. (motions to dismiss and for summary judgment); 
 Dennis R. Pearson, J. (final
 judgment)
 
 
 
 
  
 
 


Kaveh S. Shahi of Cleary Shahi & Aicher, P.C., Rutland,
and Henry P. Sorett of Brickley, Sears

  & Sorett, P.A., Boston, Massachusetts, for
Defendant-Appellant Frontier Communications of

  America, Inc.

 

Allan R. Keyes of Ryan Smith & Carbine, Ltd., Rutland,
for Defendant-Appellee 

  Turner Electric, LLC

 

James M. Cooley and William L. Gagnon of Heilmann, Ekman
& Associates, Burlington, for

  Cross-Defendants/Appellees Stantec Consulting,
Inc., Stantec Consulting Corporation, Stantec

  Consulting Services, Inc., f/k/a Dufresne Henry.

 

Eric S. Miller and Kevin A. Lumpkin of Sheehey Furlong &
Behm P.C., Burlington, for

  Cross-Defendant/Cross-Appellee Graybar Electric
Company, Inc.

 

 

PRESENT:    Reiber, C.J., Dooley, Skoglund and
Robinson, JJ., and Morse, J. (Ret.), 

                    
Specially Assigned

 

¶ 1.            
REIBER, C.J.   Defendant Frontier Communications of
America, Inc. appeals decisions denying its cross-claims for indemnity against
three codefendants, Stantec Consulting, Inc., Turner Electric Corporation, and
Graybar Electric Company.[1] 
Frontier asserts that it is entitled to implied indemnification from all three
codefendants and express indemnity from Graybar, and the court erred in
granting summary judgment because there are disputed questions of fact. 
We affirm.

¶ 2.            
This case stems from an electrocution injury suffered by plaintiff
Michael Hemond in 2006 while employed as a lineman and operating an electrical
switch on equipment owned by Frontier.  The switch, known as Switch 14E,
was located at an electrical substation in Richford, Vermont.  The switch
was installed as part of a reconstruction of the Richford substation.  The
plans for this upgrade included the removal of an oil-break switch and
installation of an air-break switch at that location.  As explained in Hemond
II, 2015 VT 66, ¶ 2 n.2, Switch 14E is a unitized switch, which means
it shares a common pole with Switch 14W.  The switch is opened and closed
using a vertical steel operating pipe.  When the pipe is rotated the
blades of the switch open.  A switch is opened to interrupt the flow of
electricity through the line.  When the line is carrying a load of
electricity, an electrical arc can form as electricity attempts to conduct
through the air.  The air-break switch is manufactured with optional
insulating components, but none were installed at Switch 14E.  When Mr.
Hemond operated the switch, an electrical arc formed, flashed over the support
structure, and electrocuted Mr. Hemond.  

¶ 3.            
Mr. Hemond and his wife filed suit.  In addition to Frontier, the
suit named several other defendants including: Stantec, a consulting firm that
provided services to Frontier in connection with the reconstruction of the
Richford substation; Turner, the manufacturer of the switch; and Graybar, the
distributor of the switch.  The suit alleged, among other things,
negligence in the design, manufacture, installation, and construction of the
substation, negligent selection and installation of the switch, and defective
manufacture, design, and distribution of the switch.  

¶ 4.            
As relevant to this case, Frontier filed cross-claims for implied
indemnification against Stantec, Graybar, and Turner, and for express
indemnification against Turner.  Those codefendants filed for either
dismissal or summary judgment on Frontier’s claims for indemnification. 
The following facts were included in Stantec’s statement of undisputed facts
and not disputed by Frontier.  The upgrade to the transmission lines and
distribution facilities was overseen by Frontier’s employee Andy Letourneau, an
electrical engineer.  Mr. Letourneau was responsible for development and
design as well as oversight of construction and maintenance, and safety. 
Michael Sullivan, another Frontier employee, assisted Mr. Letourneau.  Mr.
Letourneau made the decision to remove the oil-break switch at the Richford
substation, and to order the Turner air-break switch without an interrupter for
use.  The decision to incorporate air-break switches without load
interrupters were made before Stantec was hired.  With respect to the
Richford upgrade, Stantec was hired to provide conceptual drawings to be used
before the Public Service Board (PSB) showing whether the equipment fit within
spatial requirements.  Stantec provided conceptual drawings and submitted
them to the PSB.  

¶ 5.            
Frontier ordered the Turner switch through its local distributor,
Graybar.  Mr. Sullivan filled out the switch-specification sheet from
Graybar and it was transmitted to Turner.  Frontier began construction on
the Richford substation in July 2003.  Frontier followed a standard design
that it had used on two other substations.  

¶ 6.            
Following a hearing, the court issued a written decision.  The
court explained that it was treating the motions to dismiss as motions for
summary judgment.  The court entered an order in June 2011 granting
summary judgment for Stantec and Turner on Frontier’s claim of implied
indemnification.  In a subsequent order, the court also granted summary
judgment to Graybar on the implied-indemnity claim and to Turner on Frontier’s
claim for express indemnity.[2] 


¶ 7.            
Frontier filed a motion to reconsider, raising both substantive and
procedural arguments.  As to procedure, Frontier argued that the court
violated its procedural rights by treating the motions to dismiss as motions
for summary judgment without notifying the parties in advance of the changed
status of the motion and giving them a reasonable opportunity to submit
additional materials.  See V.R.C.P. 12(c) (explaining that if matters
outside pleadings are considered, motion is treated as one for summary judgment
and parties are “given reasonable opportunity to present all material” relevant
to motion).  The court concluded that any error was harmless.  The
court noted that the sole fact considered by the court outside of the pleadings
was that Frontier’s engineer chose the switch, and that the plaintiffs’
complaint was based on that choice.  The court explained that consideration
of this fact did not prejudice Frontier because Frontier did not dispute this
fact, and even in its motion to reconsider, did not deny that it had previously
conceded that its engineer had selected the switch.  Therefore the court
concluded that any failure to provide an opportunity to respond was harmless.

¶ 8.            
Frontier also challenged the substance of the court’s decision on the
implied and express indemnity.  The court denied this motion, concluding
that there was no error of law.  Frontier appeals these decisions.

¶ 9.            
We review a grant of summary judgment de novo, applying the same
standard as the trial court.  Progressive Cas. Ins. Co. v. MMG Ins. Co.,
2014 VT 70, ¶ 10, ___ Vt. ___, 103 A.3d 899.  Summary judgment will be
granted where there is no genuine dispute as to any material fact and the
moving party is entitled to judgment as a matter of law.  V.R.C.P.
56(a).  In determining whether there is a dispute of fact, this Court
accepts as true the allegations made by the nonmoving party, but conclusory
allegations without supporting facts are insufficient to sustain a claim for
indemnity.  White v. Quechee Lakes Landowners’ Ass’n, Inc., 170 Vt.
25, 28, 742 A.2d 734, 736 (1999).

¶ 10.        
The court’s summary judgment decisions at issue in this appeal involve
the right to indemnity.  “Vermont law ordinarily bars actions for
contribution between joint tortfeasors, but the right to indemnity is an
exception to this rule.”  Chapman v. Sparta, 167 Vt. 157, 159, 702
A.2d 132, 134 (1997) (citation omitted).  A right to indemnity exists
either where there is an express agreement between the parties or where
indemnity can be implied due to the circumstances.  Id. 
Frontier alleged both types of indemnity in this case.

I. 
Implied Indemnity

¶ 11.        
On appeal, Frontier first argues that the court erred in denying its
claim for implied indemnification against Stantec, Turner, and Graybar. 
Implied indemnity will apply “only when the party seeking indemnity is
vicariously liable to the third person because of a legal relationship or
because of the party’s failure to discover a dangerous condition caused by the
indemnifying party, ‘who is primarily responsible for the condition.’ ” 
Hemond II, 2015 VT 66, ¶ 9 (quoting White, 170 Vt. at 29, 742
A.2d at 737).  

¶ 12.        
Here, the court granted summary judgment for Stantec and Turner “on the
ground that any negligence asserted against Frontier is its own, active
negligence, for which there is no right of indemnity.”  The trial court
subsequently also granted summary judgment for Graybar on the implied-indemnity
claim.  The court explained that for the Hemonds to prevail on their
claims, it would have to find Frontier “at active fault—specifically for
choosing the wrong switch” and therefore Frontier could not seek implied
indemnity.

¶ 13.        
We agree, but on different grounds.  Frontier has failed to meet
the standard for implied indemnity because this case presents no facts that
could demonstrate that its liability to plaintiffs was vicarious through
Stantec, Turner, or Graybar, or that Frontier was not primarily responsible for
creating the dangerous condition that caused the accident.  

¶ 14.        
Frontier argues that this conclusion is in error, claiming that while a
party who knows of a hazardous condition but fails to address it cannot seek
indemnity, a party who should have known of the hazard is not barred from
seeking implied indemnity.  Frontier asserts that it did not engage in
“active” negligence, but rather that its negligence, if any, was in failing to
discover that the switch was dangerous when used in a particular
circumstance.  Frontier likens its situation to Bardwell Motor Inn,
Inc. v. Accavallo, 135 Vt. 571, 381 A.2d 1061 (1977).  In that case, a
hotel contracted with the defendants to replace a glass panel on an exterior
door.  The defendants removed the glass panel and then left the premises
without advising the hotel or leaving a warning sign.  A hotel patron
suffered a fall and injuries.  The hotel then filed a claim for implied
indemnity against the defendants.  The trial court denied the defendants’
motion to dismiss, concluding that the hotel was not actively negligent, and on
interlocutory appeal, this Court affirmed.  We declined to adopt the terms
“active” or “passive” negligence.  Instead, relying on the Restatement of
Restitution, we explained that where a party has a duty with respect to the
condition of land or property, but has entrusted performance of that duty to a
third party, the negligent failure to discover or remedy a defect does not bar
indemnity.  Id. at 573, 381 A.2d at 1062 (citing Restatement
(First) of Restitution § 95 (1937)).  We held that although the hotel had
a duty to keep its premises safe, it was the defendants’ duty to make the door
safe and warn of dangers, and the defendants were primarily at fault for
creating the hazardous condition.  Id. at 573-74, 381 A.2d at
1062-63.

¶ 15.        
As it relates to this case, Frontier claims that it, like the hotel
owner, had a duty to keep its premises safe, but that it did not “actively”
create an unsafe condition because the switch was not inherently dangerous and
Frontier did not know that the switch was unsafe.  Frontier claims that
like the defendants in Bardwell Motor Inn, Stantec, Graybar, and Turner
should have warned Frontier of the foreseeability of danger if the switch was
used to interrupt load in excess of its capacity, and therefore those
defendants should indemnify Frontier.  The critical difference, however,
is that even assuming Stantec, Graybar, and Turner had a duty to warn, Frontier
has failed to demonstrate that those entities assumed the primary
responsibility for ensuring safety.  As explained in Hemond II, it
was Frontier’s responsibility to design a safe substation.  Frontier
failed to show that any of the codefendants assumed primary responsibility for
safely designing the substation or choosing the switch.  Frontier argues
that the contractual obligations of Stantec, Graybar, and Turner all contained
an implied promise of ensuring the safety of the substation.  At most, the
evidence highlighted by Frontier suggests that Frontier relied on Stantec to
provide advice regarding whether the equipment was suitable and met applicable
codes, and on Turner and Graybar to indicate whether the switch was suitable
for its intended purpose.  Frontier has failed to show that it delegated
primary responsibility over safety to any of its codefendants. 

¶ 16.        
Further, a critical difference between this case and Bardwell is
that here the undisputed facts show that Frontier’s own acts, not those of any
other defendant, created the dangerous condition which led to plaintiff’s
injury.  Implied indemnity is limited to circumstances where the violation
of the duty was “ ‘the primary fault’ ” of the indemnitor.  Knisely
v. Cent. Vt. Hosp., 171 Vt. 644, 647, 769 A.2d 5, 9 (2000) (mem.) (quoting Bardwell,
135 Vt. at 573, 381 A.2d at 1062).  The undisputed facts show that Frontier
chose and installed the switch.  To the extent the existence of the switch
was a dangerous condition, it was due to Frontier’s own action.  The
negligence of the other parties, if any, was in failing to warn that the switch
may not operate safely in all conditions, but that negligence was not the
“primary” cause of the dangerous condition.  See Restatement (First) of
Restitution § 95 (explaining that a party’s negligent failure to make safe a
dangerous condition is excused only when the danger was caused by the act of
another who, as between the two, is primarily responsible for the
condition).  

¶ 17.        
It is immaterial whether Frontier knew that the switch could not be used
safely in all conditions or, alternatively, whether Frontier should have known
that the switch was safe only if operated under certain conditions.  The
critical fact—undisputed by Frontier—is that Frontier retained responsibility
for the safety of its equipment and its workplace, and that the injury was
primarily caused by Frontier’s own actions in choosing, and installing the
switch.  

¶ 18.        
For this reason, there is no merit to Frontier’s argument that disputed
questions of fact remain as to whether Frontier knew the switch was unsafe and
whether the switch was per se unsafe.  These issues are not determinative
of the indemnity question and therefore did not preclude summary judgment. 

II. 
Express Indemnity

¶ 19.        
Frontier also claims that the court erred in granting judgment to Turner
on Frontier’s claim for express indemnification.  Frontier asserts that it
is a third-party beneficiary of the purchase-and-sale agreement between Turner
and Graybar in which Turner agreed to indemnify Graybar against “all losses,
damages, liabilities, and claims.”  The trial court explained that it was
not reasonable to conclude that the manufacturer in a preprinted-form sales
slip to a distributor intended to indemnify the ultimate purchaser of the item,
where no such intent was expressed in the language itself and “[w]ithout knowing
the intended use/application.”

¶ 20.        
“The determination of whether a party may be classified as a third-party
beneficiary, as opposed to an incidental beneficiary, is based on the original
contracting parties’ intention.”  McMurphy v. State, 171 Vt. 9, 16,
757 A.2d 1043, 1049 (2000).  Therefore, Frontier had to present evidence
showing that Graybar and Turner entered their agreement in contemplation of
conferring a benefit on Frontier.  See Morrisville Lumber Co. v.
Okcuoglu, 148 Vt. 180, 184, 531 A.2d 887, 890 (1987).  As with any
contract provision, we first look to the language of the contract
provision.  Hamelin v. Simpson Paper (Vt.) Co., 167 Vt. 17, 19, 702
A.2d 86, 88 (1997).  If that language is unambiguous, there is no need to
consider evidence outside of the writing.  Id.

¶ 21.        
Nothing in the language of the preprinted form demonstrates that Graybar
and Turner intended to benefit Frontier.  Frontier alleges that the
following facts so demonstrate: it was listed as the customer on the sales
slip; Frontier completed a form detailing the intended use of the switch, which
was sent to Turner; and Turner shipped the switch directly to Frontier. 
These facts certainly demonstrate that Turner knew Frontier was the intended
recipient of the switch.  They do not, however, indicate that Graybar and
Turner intended to make Frontier a beneficiary of the indemnity clause. 
The clause is plainly limited to the named parties.  There is no general
language in the purchase order indicating that Turner intended to indemnify
both Graybar and the ultimate consumer of the product.  Cf. Sigismondi
v. J.T. Magen Constr. Co., 2010 WL 5060344, at *3 (N.Y. Sup. Ct. Dec. 8,
2010) (holding that owner of building was third-party beneficiary of contract
between general contractor and subcontractor where purchase order indicated
that subcontractor would indemnify both contractor and owner).  Nor is
there language identifying Frontier as an intended beneficiary of the
agreement.[3] 
Under these circumstances, the language of the agreement is unambiguous and
Frontier has failed to demonstrate that it was entitled to express
indemnification.  See Howell v. Ketchikan Pulp Co., 943 P.2d 1205,
1207 (Alaska 1997) (denying employee’s claim for indemnity as third-party
beneficiary of contract between employer and machine-repair company because
contract did not contain language indicating intent to benefit employees); Vargas
v. N.Y.C. Transit Auth., 874 N.Y.S.2d 446, 440-41 (App. Div. 2009) (holding
right to indemnity did not exist where parties were not in contractual privity
and purchase order did not make contractor third-party beneficiary of contract
between subcontractor and sub-subcontractor); Ferguson v. Marshall
Contractors, Inc., 707 A.2d 660, 662-63 (R.I. 1998) (per curiam)
(concluding that general contractor’s claim for indemnification from labor
subcontractor failed because it had no direct agreement and agreement between
labor and steel subcontractors did not contain intent to benefit general
contractor).

¶ 22.        
On appeal, Frontier argues that the court erred in converting Turner’s
motion to dismiss into one for summary judgment because it did not have an
opportunity to respond and demonstrate that the parties intended to benefit
Frontier.  Although the court should have provided notice to the parties
prior to converting the motion, Frontier has failed to demonstrate that it was
prejudiced by this failure.  See Fitzgerald v. Congleton, 155 Vt.
283, 293-94, 583 A.2d 595, 601 (1990) (concluding that court’s failure to give
parties advance notice of conversion of motion to dismiss to motion for summary
judgment did not result in reversible error where court subsequently granted
party opportunity to respond).  

¶ 23.        
First, although the court indicated that it was converting the motion to
dismiss into one for summary judgment, the court did not indicate that it
considered anything outside of the parties’ pleadings in deciding the
express-indemnity issue.  The determination was made as a matter of law
based on the pleadings.  In addition, we conclude that the language of the
contract here demonstrates unambiguously that the parties did not intend to
benefit Frontier as a third-party beneficiary.  Where a contractual indemnity
clause is unambiguous, there is no need to look at facts beyond the actual
writing.  State v. Prison Health Servs., Inc., 2013 VT 119, ¶ 9,
195 Vt. 360, 88 A.3d 414.  Because there was no factual question to
resolve, Frontier was not prejudiced by the lack of an opportunity to submit
further factual information on the parties’ intent.   

¶ 24.        
Further, although Frontier did not initially have a formal opportunity
to respond, Frontier subsequently had an opportunity to provide additional
information to the court when it filed its motion to reconsider.  Indeed,
with that motion Frontier submitted an email from a Stantec employee inquiring
of Turner about aspects of the switch in support of Frontier’s argument that
Turner knew about the intended use of the switch.  Therefore, Frontier had
a chance to respond with additional information.  As explained above, this
information does not alter the terms of the purchase-and-sale agreement, which
unambiguously does not confer on Frontier any rights as a third-party
beneficiary.

III. 
Motions

¶ 25.        
Finally, we address two pending motions filed by the parties in this
Court, both concerning the proper scope of the record on appeal.  Frontier
moved to strike portions of the appellees’ briefs filed by Stantec, Graybar,
and Turner, and the supplemental printed case filed by Stantec, claiming that
they contained references to matters not properly part of the record on appeal,
in particular, references to events that occurred after the decisions on appeal
were issued, including facts about the trial.  Stantec, Graybar, and
Turner opposed the motion, arguing that the facts related to the proceedings
following the court’s ruling were part of the record on appeal.  See
V.R.A.P. 10(a) (defining record on appeal).  Insofar as it was not
necessary for this Court to consider any of the facts subsequent to the ruling
on the motion for summary judgment, including facts related to the jury trial
and verdict, the motion is denied as moot.

¶ 26.        
The second unresolved motion was filed by Stantec following oral
argument.  Stantec moved for permission to direct the Court’s attention to
sections of its supplemental printed case in response to statements made by
Frontier in rebuttal argument about the scope of Stantec’s contracted
work.  Frontier opposed the motion, arguing that portions of the
supplemental printed case were not before the trial court at the time the
summary judgment motions were considered.  

¶ 27.        
A review of the record reveals that the references Stantec makes are all
in exhibits that were attached to its statement of undisputed facts submitted
to the trial court in support of its motion for summary judgment.  Because
these materials were part of its summary-judgment filings, they are undisputedly
part of the record on appeal, and Stantec’s motion for leave to direct the
Court to these portions of its supplemental printed case is granted.

Affirmed.

 


 
 
  
 
 
  
 
 
 FOR THE COURT:
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
  
 
 
 
 
  
 
 
  
 
 
 Chief
 Justice
 
 


 














[1] 
Two other appeals have arisen from the same action and describe the underlying
facts in more detail.  These are an interlocutory appeal on whether the
personal-injury action was barred by the worker’s compensation exclusivity
provision, Hemond v. Frontier Commc’ns of Am., Inc. (Hemond I),
2012 VT 94, 192 Vt. 646, 59 A.3d 766 (mem.), and an appeal on whether Frontier
was entitled to indemnity from codefendant Navigant Consulting Group, Inc., Hemond
v. Frontier Commc’ns of Am., Inc. (Hemond II), 2015 VT 66, ___ Vt.
___, ___ A.3d ___ .  As noted in those decisions, at the time plaintiff
was injured, the utility assets were owned by Citizens Communications Company,
which was later purchased by Frontier.  This decision uses “Frontier” to
describe actions taken by both Frontier and its predecessors-in-interest.

 

In addition, Stantec Consulting, Inc., Stantec
Consulting Corporation, and Stantec Consulting Services, Inc., which was
formerly known as Dufresne Henry, are collectively referred to herein as
“Stantec.”





[2] 
The court’s order noted that the court was treating all the motions to dismiss
as motions for summary judgment based on Frontier’s “clear acceptance of the
fact that its engineer actually chose the switch in question for use in the
sub-station.  Plaintiffs explicitly base their action against Frontier on
that choice.”  





[3] 
On appeal, Frontier relies on Tom Brown Contracting, Inc. v. Fishman,
658 S.E.2d 140 (Ga. Ct. App. 2008), in support of its argument that the
purchase order intended to benefit the customer ultimately purchasing the
switch.  In Tom Brown, a flooring supplier had a contract with an
accounting firm to hold customer deposits until the flooring supplier shipped
the materials.  When a customer paid the deposit but failed to receive the
proper materials, it sued the accounting firm for return of its deposit. 
The court concluded that the contract between the supplier and the accounting
firm expressed an intent to benefit the eventual consumer by imposing on the
accounting firm the obligation to hold the money until the materials were
shipped.  Id. at 144.  Tom Brown is distinguishable
because here there is no similar provision in the contract between Turner and
Graybar that even references the ultimate customer, let alone sets forth
obligations of Turner to the ultimate customer.  As such, unlike Tom
Brown, the purchase-and-sale agreement contains no indication that its
terms are meant to benefit the ultimate customer of the goods.