## Grievance of Ronald West and Merill Cray

[685 A.2d 1099]

No. 95-564

Present: **Allen, C.J., Gibson, Dooley, Morse and Johnson, JJ.**

Opinion Filed September 13, 1996

*Samuel C. Palmisano*, VSEA Legal Counsel, and *Mark Heyman*, Law Clerk (On the Brief), Montpelier, for Grievants-Appellees.

*Jeffrey L. Amestoy*, Attorney General, and *F. Michael Seibert* and *David Herlihy*, Assistant Attorneys General, Montpelier, for Appellant State of Vermont.

**Gibson, J.** The State of Vermont appeals an order of the Vermont Labor Relations Board requiring the State to provide information to the Vermont State Employees' Association, Inc. (VSEA) for use in bringing a classification grievance. We affirm.

The facts are not in dispute. The Office of the Secretary of State employs grievants West and Cray as investigators in the Office of Professional Regulation (OPR). Following a 1990 classification review by the Department of Personnel, the position of OPR investigator was renamed "licensing board investigator"[*] (LBI) and separated into three levels, LBI I (Pay Grade 17), LBI II (Pay Grade 18), and LBI III (Pay Grade 19); grievants are both classified as LBI IIIs.

In December 1993, the Secretary of State filed a request for classification review (RFR) that recommended elevating all licensing board investigators to Pay Grade 22, which is the pay grade assigned to investigators employed by the Office of the Attorney General. At an April 1994 meeting with classification analysts from the Department, grievants argued that their positions were fully comparable to the Attorney General's investigators and should receive the same pay grade. The analysts reached a preliminary conclusion that licensing board investigators, including grievants, should receive Pay Grade 19.

In early 1994, the Department appointed a so-called "benchmark committee" to conduct, for internal purposes only, classification reviews of entire occupational groups or classes. As its first project, the committee was instructed to review all investigator positions in state service. The Department hired Norman Willis, a personnel consultant, to train the benchmark committee to conduct the reviews. An investigator in the Attorney General's Office learned of the committee's work and filed a grievance with the Department, which ordered the internal review suspended until further notice.

The benchmark committee, however, continued its assignment as a training exercise and completed a classification review of all positions in the investigator class. The committee recommended that the Department upgrade some investigator positions and downgrade others, and further recommended that all licensing board investigators in OPR be consolidated into a single class and assigned Pay Grade 19. On June 13, 1994, the Department's operations director forwarded the committee's recommendations to the Commissioner of Personnel and to Norman Willis. In a June 27, 1994 letter to the operations director, Willis noted that he had reviewed the committee's work and reached similar conclusions.

On August 4, 1994, the Department notified grievants that the classification review, conducted in response to the Secretary of State's RFR, had resulted in the consolidation of all licensing board investigators into a single class at Pay Grade 19; grievants' pay grade therefore remained the same. According to the Employee Notice Forms that grievants received:

> The rating assigned to the Secretary of State's investigators fits well into *the entire range of investigative classes which were reviewed.* These ratings fall into three broad categories:
>
> Positions which deal primarily with paper record reviews received a rating of pay grade 17.
>
> Positions which must proceed beyond paperwork to the interviewing of witnesses and the analysis of other physical evidence were assigned to pay grade 19.
>
> Positions which, in addition to investigations, are required to do more than the investigative nature of their job and have more complex roles in the respective departments. The Secretary of State's Investigators are most appropriately considered as part of the middle group (pay grade 19).

(Emphasis added.)

Pursuant to Article 16 § 3(d) of its 1994-96 collective bargaining agreement with the State (Agreement), VSEA requested an informal meeting with the Department's operations director to discuss the classification decision. In that meeting, VSEA learned for the first time that the classification review and recommendations had come from the benchmark committee, and that Norman Willis had reviewed the committee's work and made the same recommendation.

On August 21, 1994, VSEA asked the Department to provide it with all materials that Willis had used to review the committee's work. The

Department sent the VSEA copies of materials used by the benchmark committee and by Willis to reach their recommendations. These materials were redacted, however, to eliminate references to state investigator positions in departments other than OPR, because the Department did not wish the benchmark committee's internal recommendations made public until the Department had acted upon those recommendations.

In November 1994, the VSEA filed a grievance with the Department, alleging that the Department violated the Agreement by failing to provide VSEA with all information used by the Commissioner during the classification review.[1] The Department denied the grievance, and pursuant to Article 16 of the Agreement, VSEA filed the instant grievance with the Board.

The Board held two days of hearings on April 27 and May 4, 1995. At the April 27 hearing, the State moved to dismiss the grievance for lack of subject-matter jurisdiction. Grievants moved to amend the grievance to allege violation of Article 6(5) of the Agreement, which provides, in relevant part:

> 5. The State will also provide such additional information as is reasonably necessary to serve the needs of the VSEA *as exclusive bargaining agent* and which is neither confidential nor privileged under law. Access to such additional information shall not be unreasonably denied. Failure to provide information as required under this Article may be grieved through the grievance procedure to the Vermont Labor Relations Board . . . .

(Emphasis added.) By order dated September 29, 1995, the Board granted grievants' motion to amend, and concluded that the State had violated Article 6(5) by failing to provide VSEA with information concerning investigator positions in other state agencies. The present appeal followed.

■ Interpretations of collective bargaining agreements are within the particular expertise of the Board, and we review such interpretations with great deference to the Board's expertise. *In re Vermont State Employees' Ass'n*, 164 Vt. 214, 216, 666 A.2d 1182, 1183

---

[1] VSEA also alleged that the Department acted arbitrarily and capriciously in denying a request to tape-record informal meetings in the classification-grievance process. The Board subsequently affirmed the Department's denial, and VSEA has not pursued this claim on appeal.

(1995). We presume that the Board's actions are correct and reasonable, *In re Towle*, 164 Vt. 145, 148, 665 A.2d 55, 58 (1995), and we will uphold the Board's order if the findings of fact, taken as a whole, justify the Board's ultimate conclusion. *Vermont State Employees' Ass'n*, 164 Vt. at 216, 666 A.2d at 1183.

## I.

The State contends that the Board erred in concluding that Article 6(5) of the Agreement applies to information requested in the course of an Article 16 classification grievance. In the State's view, Article 6(5) is expressly limited to situations in which VSEA acts "as exclusive bargaining agent," and the duties of an exclusive bargaining agent under the State Employees Labor Relations Act, 3 V.S.A. §§ 901-1007, are limited to negotiating agreements.

According to the State, VSEA's role "as exclusive bargaining agent" is defined by 3 V.S.A. § 941(h), which provides that "[a] representative chosen by secret ballot *for the purposes of collective bargaining* by a majority of the votes cast shall be the exclusive representative of all the employees in such unit for a minimum of one year." (Emphasis added.) The Act defines "collective bargaining" to mean "*the process of negotiating* terms, tenure or conditions of employment between the state of Vermont . . . and representatives of employees with the intent to arrive at *an agreement*." 3 V.S.A. § 902(2) (emphasis added). Thus, according to the State, VSEA acts as exclusive bargaining agent only when it negotiates contracts, not when it represents employees in classification grievances.

Our primary goal in interpreting statutes is to give effect to the intent of the Legislature, which we attempt to discern first by looking to the language of the statute. *State v. Wool*, 162 Vt. 342, 348, 648 A.2d 655, 659 (1994). In determining legislative intent, we look beyond the language of a particular section, standing alone, to the whole statute. *Lemieux v. Tri-State Lotto Comm'n*, 164 Vt. 110, 113, 666 A.2d 1170, 1173 (1995).

We do not believe that the Act, when read as a whole, manifests a legislative intent to distinguish VSEA's duty to negotiate agreements from its other duties, such as its duty to represent state employees in classification grievances. The Act defines the word "grievance" to mean, in relevant part, the "collective bargaining representative's expressed dissatisfaction, presented in writing, with aspects of employment or working conditions under collective bar-

gaining agreement." 3 V.S.A. § 902(14). In the Classification of State Personnel Act, 3 V.S.A. §§ 309-331, the Legislature provided that "[t]he appeal procedures for classification and reclassification of an employee's or employees' positions shall be a subject for collective bargaining and when bargained this aspect of employment may be included as a grievance under section 902(14) of this title." 3 V.S.A. § 310(g). By the plain language of the statute, therefore, classification grievances fall within VSEA's duties as exclusive bargaining agent.

The State argues, however, that interpreting Article 6(5) to cover classification, as well as bargaining, grievances renders other provisions of the Agreement meaningless. Specifically, the State points to Article 11(3) and Article 17 § 2(b)[2] as being rendered superfluous under an expansive reading of Article 6(5). We disagree.

■ Traditional principles of contract law govern the construction of collective bargaining agreements. *Vermont State Colleges Faculty Fed'n v. Vermont State Colleges*, 151 Vt. 457, 461, 561 A.2d 417, 420 (1989). When an agreement is clear and unambiguous, the plain meaning of the agreement governs its interpretation. *Workman v. Agency of Transp.*, 163 Vt. 606, 608, 657 A.2d 174, 176 (1994) (mem.). We assume that parties included contract provisions for a reason, and we will not embrace a construction of a contract that would render a provision meaningless. See *Blodgett Supply Co. v. P.F. Jurgs & Co.*, 159 Vt. 222, 232, 617 A.2d 123, 128 (1992) (rejecting construction of first clause that would render second clause meaningless). Rather, we are obligated to enforce a contract as it is written, and to read the agreement in its entirety, so that the parts form a harmonious whole. *Hill v. City of Burlington*, 157 Vt. 241, 247, 597 A.2d 792, 795 (1991).

We see no conflict between the Board's interpretation of Article 6(5) and the provisions of Article 11(3) or Article 17 § 2(b). The obligation created in Article 11(3) is to the employee, not to VSEA; the obligation created in Article 17 § 2(b) is one of notification, not document production. The State's argument is therefore unavailing.

The State also contends that the Board's interpretation creates an unfair distinction between employees represented by VSEA and

---

[2] Under Article 11(3), "Any material, document, note, or other tangible item which is to be entered or used by the employer in any grievance hearing held in accordance with the Grievance Procedure Article, of this Agreement, or hearing before the Vermont Labor Relations Board, is to be provided to the employee on a one-time basis, at no cost to him/her."

Under Article 17 § 2(b), "The State shall provide written notification to the VSEA of all new rules and changes to existing rules concurrent with the notice to employees."

those not represented by VSEA. In the State's view, an employee represented by VSEA in a grievance hearing is entitled to documents under both Article 6(5) and Article 11(3), while an employee not represented by VSEA is entitled to documents only under Article 11(3). We disagree.

Article 6(5) obligates the State to provide information to VSEA, not to the employee. The Agreement further provides, in Article 15 § 5, that "the VSEA (*whether or not it is representing the aggrieved employee*) . . . shall have the right to be present, [and] to participate . . . as a party in interest" in any grievance proceeding. (Emphasis added.) Thus, any distinction between represented and unrepresented employees in grievance proceedings arises by choice of the employee rather than by operation of the Agreement.

Given our great deference to the Board's interpretations of the Agreement, we see no reason to disturb the Board's conclusion.

## II.

The State also contends that the Board improperly adjudicated a matter over which it lacked jurisdiction. According to the State, the Board exercised its authority over grievances, as set forth in Article 15 of the Agreement, to adjudicate a classification grievance that arose under Article 16.

The State's argument is fully addressed by our earlier determination that Article 6 gives VSEA the right to obtain information without regard to the type of proceeding in which VSEA participates. Once VSEA requests such information and the State denies the request, Article 6(5) expressly provides that the State's "[f]ailure to provide information as required under this Article may be grieved through the grievance procedure to the Vermont Labor Relations Board." The Agreement comports with the Board's statutory jurisdiction. See 3 V.S.A. § 926 ("The board shall hear and make final determination on the grievances of all employees who are eligible to appeal grievances to the board."). The State's contention is therefore without merit.

*Affirmed.*