2015 VT 67

**Michael Hemond and Tracey Hemond v. Frontier Communications of America, Inc., f/k/a Citizens Communications Company, d/b/a Citizens Energy Services, Vermont Electric Power Company, Inc. v. Stantec Consulting, Inc., Stantec Consulting Corporation, Stantec Consulting Services, Inc., f/k/a Dufresne Henry, Navigant Consulting Inc., Turner Electric Corporation, Turner Electric, LLC, Graybar Electric Company, Inc.**

[123 A.3d 1176]

No. 14-236

Present: Reiber, C.J., Dooley, Skoglund and Robinson, JJ., and Morse, J. (Ret.), Specially Assigned

Opinion Filed April 17, 2015

*Kaveh S. Shahi* of *Cleary Shahi & Aicher, P.C.*, Rutland, and *Henry P. Sorett* of *Brickley, Sears & Sorett, P.A.*, Boston, Massachusetts, for Defendant-Appellant Frontier Communications of America, Inc.

*Allan R. Keyes* of *Ryan Smith & Carbine, Ltd.*, Rutland, for Defendant-Appellee Turner Electric, LLC.

*James M. Cooley* and *William L. Gagnon* of *Heilmann, Ekman & Associates*, Burlington, for Cross-Defendants/Appellees Stantec Consulting, Inc., Stantec Consulting Corporation, Stantec Consulting Services, Inc., f/k/a Dufresne Henry.

*Eric S. Miller* and *Kevin A. Lumpkin* of *Sheehey Furlong & Behm P.C.*, Burlington, for Cross-Defendant/Cross-Appellee Graybar Electric Company, Inc.

¶ 1. **Reiber, C.J.** Defendant Frontier Communications of America, Inc. appeals decisions denying its cross-claims for indemnity against three codefendants, Stantec Consulting, Inc., Turner Electric Corporation, and Graybar Electric Company.[1] Frontier asserts that it is entitled to implied indemnification from all three codefendants and express indemnity from Graybar, and the court erred in granting summary judgment because there are disputed questions of fact. We affirm.

¶ 2. This case stems from an electrocution injury suffered by plaintiff Michael Hemond in 2006 while employed as a lineman and operating an electrical switch on equipment owned by Frontier. The switch, known as Switch 14E, was located at an electrical substation in Richford, Vermont. The switch was installed as part of a reconstruction of the Richford substation. The plans for this upgrade included the removal of an oil-break switch and installation of an air-break switch at that location. As explained in *Hemond II*, 2015 VT 66, ¶ 2 n.2, Switch 14E is a unitized switch, which means it shares a common pole with Switch 14W. The switch is opened and closed using a vertical steel operating pipe. When the pipe is rotated the blades of the switch open. A switch is opened to interrupt the flow of electricity through the line. When the line is carrying a load of electricity, an electrical arc can form as electricity attempts to conduct through the air. The air-break switch is manufactured with optional insulating components, but none were installed at Switch 14E. When Mr. Hemond operated the switch, an electrical arc formed, flashed over the support structure, and electrocuted Mr. Hemond.

---

[1] Two other appeals have arisen from the same action and describe the underlying facts in more detail. These are an interlocutory appeal on whether the personal-injury action was barred by the workers' compensation exclusivity provision, *Hemond v Frontier Commc'ns of Am., Inc.* (*Hemond I*), 2012 VT 94, 192 Vt. 646, 59 A.3d 766 (mem.), and an appeal on whether Frontier was entitled to indemnity from codefendant Navigant Consulting Group, Inc., *Hemond v Frontier Commc'ns of Am., Inc.* (*Hemond II*), 2015 VT 66, 199 Vt. 259, 122 A.3d 1205. As noted in those decisions, at the time plaintiff was injured, the utility assets were owned by Citizens Communications Company, which was later purchased by Frontier. This decision uses "Frontier" to describe actions taken by both Frontier and its predecessors-in-interest.

In addition, Stantec Consulting, Inc., Stantec Consulting Corporation, and Stantec Consulting Services, Inc., which was formerly known as Dufresne Henry, are collectively referred to herein as "Stantec."

¶ 3. Mr. Hemond and his wife filed suit. In addition to Frontier, the suit named several other defendants including: Stantec, a consulting firm that provided services to Frontier in connection with the reconstruction of the Richford substation; Turner, the manufacturer of the switch; and Graybar, the distributor of the switch. The suit alleged, among other things, negligence in the design, manufacture, installation, and construction of the substation, negligent selection and installation of the switch, and defective manufacture, design, and distribution of the switch.

¶ 4. As relevant to this case, Frontier filed cross-claims for implied indemnification against Stantec, Graybar, and Turner, and for express indemnification against Turner. Those codefendants filed for either dismissal or summary judgment on Frontier's claims for indemnification. The following facts were included in Stantec's statement of undisputed facts and not disputed by Frontier. The upgrade to the transmission lines and distribution facilities was overseen by Frontier's employee Andy Letourneau, an electrical engineer. Mr. Letourneau was responsible for development and design as well as oversight of construction and maintenance, and safety. Michael Sullivan, another Frontier employee, assisted Mr. Letourneau. Mr. Letourneau made the decision to remove the oil-break switch at the Richford substation, and to order the Turner air-break switch without an interrupter for use. The decision to incorporate air-break switches without load interrupters was made before Stantec was hired. With respect to the Richford upgrade, Stantec was hired to provide conceptual drawings to be used before the Public Service Board (PSB) showing whether the equipment fit within spatial requirements. Stantec provided conceptual drawings and submitted them to the PSB.

¶ 5. Frontier ordered the Turner switch through its local distributor, Graybar. Mr. Sullivan filled out the switch-specification sheet from Graybar and it was transmitted to Turner. Frontier began construction on the Richford substation in July 2003. Frontier followed a standard design that it had used on two other substations.

¶ 6. Following a hearing, the court issued a written decision. The court explained that it was treating the motions to dismiss as motions for summary judgment. The court entered an order in June 2011 granting summary judgment for Stantec and Turner on Frontier's claim of implied indemnification. In a subsequent order,

the court also granted summary judgment to Graybar on the implied-indemnity claim and to Turner on Frontier's claim for express indemnity.[2]

¶ 7. Frontier filed a motion to reconsider, raising both substantive and procedural arguments. As to procedure, Frontier argued that the court violated its procedural rights by treating the motions to dismiss as motions for summary judgment without notifying the parties in advance of the changed status of the motion and giving them a reasonable opportunity to submit additional materials. See V.R.C.P. 12(c) (explaining that if matters outside pleadings are considered, motion is treated as one for summary judgment and parties are "given reasonable opportunity to present all material" relevant to motion). The court concluded that any error was harmless. The court noted that the sole fact considered by the court outside of the pleadings was that Frontier's engineer chose the switch, and that the plaintiffs' complaint was based on that choice. The court explained that consideration of this fact did not prejudice Frontier because Frontier did not dispute this fact, and even in its motion to reconsider, did not deny that it had previously conceded that its engineer had selected the switch. Therefore the court concluded that any failure to provide an opportunity to respond was harmless.

¶ 8. Frontier also challenged the substance of the court's decision on the implied and express indemnity. The court denied this motion, concluding that there was no error of law. Frontier appeals these decisions.

¶ 9. We review a grant of summary judgment de novo, applying the same standard as the trial court. *Progressive Cas. Ins. Co. v. MMG Ins. Co.*, 2014 VT 70, ¶ 10, 197 Vt. 253, 103 A.3d 899. Summary judgment will be granted where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. V.R.C.P. 56(a). In determining whether there is a dispute of fact, this Court accepts as true the allegations made by the nonmoving party, but conclusory allegations without supporting facts are insufficient to sustain a claim for indemnity. *White v. Quechee Lakes Landowners' Ass'n*, 170 Vt. 25, 28, 742 A.2d 734, 736 (1999).

---

[2] The court's order noted that the court was treating all the motions to dismiss as motions for summary judgment based on Frontier's "clear acceptance of the fact that its engineer actually chose the switch in question for use in the sub-station. Plaintiffs explicitly base their action against Frontier on that choice."

¶ 10. ■ The court's summary judgment decisions at issue in this appeal involve the right to indemnity. "Vermont law ordinarily bars actions for contribution between joint tortfeasors, but the right to indemnity is an exception to this rule." *Chapman v. Sparta*, 167 Vt. 157, 159, 702 A.2d 132, 134 (1997) (citation omitted). A right to indemnity exists either where there is an express agreement between the parties or where indemnity can be implied due to the circumstances. *Id.* Frontier alleged both types of indemnity in this case.

## I. Implied Indemnity

¶ 11. ■ On appeal, Frontier first argues that the court erred in denying its claim for implied indemnification against Stantec, Turner, and Graybar. Implied indemnity will apply "only when the party seeking indemnity is vicariously or secondarily liable to the third person because of a legal relationship with the third person or because of the party's failure to discover a dangerous condition caused by the indemnifying party, 'who is primarily responsible for the condition.'" *Hemond II*, 2015 VT 66, ¶ 9 (quoting *White*, 170 Vt. at 29, 742 A.2d at 737).

¶ 12. Here, the court granted summary judgment for Stantec and Turner "on the ground that any negligence asserted against Frontier is its own, active negligence, for which there is no right of indemnity." The trial court subsequently also granted summary judgment for Graybar on the implied-indemnity claim. The court explained that for the Hemonds to prevail on their claims, it would have to find Frontier "at active fault — specifically for choosing the wrong switch" and therefore Frontier could not seek implied indemnity.

¶ 13. ■ We agree, but on different grounds. Frontier has failed to meet the standard for implied indemnity because this case presents no facts that could demonstrate that its liability to plaintiffs was vicarious through Stantec, Turner, or Graybar, or that Frontier was not primarily responsible for creating the dangerous condition that caused the accident.

¶ 14. Frontier argues that this conclusion is in error, claiming that while a party who knows of a hazardous condition but fails to address it cannot seek indemnity, a party who should have known of the hazard is not barred from seeking implied indemnity. Frontier asserts that it did not engage in "active" negligence, but

rather that its negligence, if any, was in failing to discover that the switch was dangerous when used in a particular circumstance. Frontier likens its situation to *Bardwell Motor Inn, Inc. v. Accavallo*, 135 Vt. 571, 381 A.2d 1061 (1977). In that case, a hotel contracted with the defendants to replace a glass panel on an exterior door. The defendants removed the glass panel and then left the premises without advising the hotel or leaving a warning sign. A hotel patron suffered a fall and injuries. The hotel then filed a claim for implied indemnity against the defendants. The trial court denied the defendants' motion to dismiss, concluding that the hotel was not actively negligent, and on interlocutory appeal, this Court affirmed. We declined to adopt the terms "active" or "passive" negligence. Instead, relying on the Restatement of Restitution, we explained that where a party has a duty with respect to the condition of land or property, but has entrusted performance of that duty to a third party, the negligent failure to discover or remedy a defect does not bar indemnity. *Id.* at 573, 381 A.2d at 1062 (citing Restatement of Restitution § 95 (1937)). We held that although the hotel had a duty to keep its premises safe, it was the defendants' duty to make the door safe and warn of dangers, and the defendants were primarily at fault for creating the hazardous condition. *Id.* at 573-74, 381 A.2d at 1062-63.

¶ 15. As it relates to this case, Frontier claims that it, like the hotel owner, had a duty to keep its premises safe, but that it did not "actively" create an unsafe condition because the switch was not inherently dangerous and Frontier did not know that the switch was unsafe. Frontier claims that like the defendants in *Bardwell Motor Inn*, Stantec, Graybar, and Turner should have warned Frontier of the foreseeability of danger if the switch was used to interrupt load in excess of its capacity, and therefore those defendants should indemnify Frontier. The critical difference, however, is that even assuming Stantec, Graybar, and Turner had a duty to warn, Frontier has failed to demonstrate that those entities assumed the primary responsibility for ensuring safety. As explained in *Hemond II*, it was Frontier's responsibility to design a safe substation. Frontier failed to show that any of the codefendants assumed primary responsibility for safely designing the substation or choosing the switch. Frontier argues that the contractual obligations of Stantec, Graybar, and Turner all contained an implied promise of ensuring the safety of the

substation. At most, the evidence highlighted by Frontier suggests that Frontier relied on Stantec to provide advice regarding whether the equipment was suitable and met applicable codes, and on Turner and Graybar to indicate whether the switch was suitable for its intended purpose. Frontier has failed to show that it delegated primary responsibility over safety to any of its codefendants.

¶ 16. ██ ██ Further, a critical difference between this case and *Bardwell* is that here the undisputed facts show that Frontier's own acts, not those of any other defendant, created the dangerous condition which led to plaintiff's injury. Implied indemnity is limited to circumstances where the violation of the duty was " 'the primary fault' " of the indemnitor. *Knisely v. Cent. Vt. Hosp.*, 171 Vt. 644, 647, 769 A.2d 5, 9 (2000) (mem.) (quoting *Bardwell*, 135 Vt. at 573, 381 A.2d at 1062). The undisputed facts show that Frontier chose and installed the switch. To the extent the existence of the switch was a dangerous condition, it was due to Frontier's own action. The negligence of the other parties, if any, was in failing to warn that the switch may not operate safely in all conditions, but that negligence was not the "primary" cause of the dangerous condition. See Restatement of Restitution § 95 (explaining that a party's negligent failure to make safe a dangerous condition is excused only when the danger was caused by the act of another who, as between the two, is primarily responsible for the condition).

¶ 17. It is immaterial whether Frontier knew that the switch could not be used safely in all conditions or, alternatively, whether Frontier should have known that the switch was safe only if operated under certain conditions. The critical fact — undisputed by Frontier — is that Frontier retained responsibility for the safety of its equipment and its workplace, and that the injury was primarily caused by Frontier's own actions in choosing, and installing the switch.

¶ 18. For this reason, there is no merit to Frontier's argument that disputed questions of fact remain as to whether Frontier knew the switch was unsafe and whether the switch was per se unsafe. These issues are not determinative of the indemnity question and therefore did not preclude summary judgment.

## II. Express Indemnity

¶ 19. Frontier also claims that the court erred in granting judgment to Turner on Frontier's claim for express indemnification. Frontier asserts that it is a third-party beneficiary of the purchase-and-sale agreement between Turner and Graybar in which Turner agreed to indemnify Graybar against "all losses, damages, liabilities, and claims." The trial court explained that it was not reasonable to conclude that the manufacturer in a preprinted-form sales slip to a distributor intended to indemnify the ultimate purchaser of the item, where no such intent was expressed in the language itself and "[w]ithout knowing the intended use/application."

¶ 20. ■ "The determination of whether a party may be classified as a third-party beneficiary, as opposed to an incidental beneficiary, is based on the original contracting parties' intention." *McMurphy v. State*, 171 Vt. 9, 16, 757 A.2d 1043, 1049 (2000). Therefore, Frontier had to present evidence showing that Graybar and Turner entered their agreement in contemplation of conferring a benefit on Frontier. See *Morrisville Lumber Co. v. Okcuoglu*, 148 Vt. 180, 184, 531 A.2d 887, 890 (1987). As with any contract provision, we first look to the language of the contract provision. *Hamelin v. Simpson Paper (Vt.) Co.*, 167 Vt. 17, 19, 702 A.2d 86, 88 (1997). If that language is unambiguous, there is no need to consider evidence outside of the writing. *Id.*

¶ 21. ■ Nothing in the language of the preprinted form demonstrates that Graybar and Turner intended to benefit Frontier. Frontier alleges that the following facts so demonstrate: it was listed as the customer on the sales slip; Frontier completed a form detailing the intended use of the switch, which was sent to Turner; and Turner shipped the switch directly to Frontier. These facts certainly demonstrate that Turner knew Frontier was the intended recipient of the switch. They do not, however, indicate that Graybar and Turner intended to make Frontier a beneficiary of the indemnity clause. The clause is plainly limited to the named parties. There is no general language in the purchase order indicating that Turner intended to indemnify both Graybar and the ultimate consumer of the product. Cf. *Sigismondi v. J.T. Magen Constr. Co.*, 2010 WL 5060344, at *3 (N.Y. Sup. Ct. Dec. 8, 2010) (holding that owner of building was third-party beneficiary of contract between general contractor and subcontractor where

purchase order indicated that subcontractor would indemnify both contractor and owner). Nor is there language identifying Frontier as an intended beneficiary of the agreement.[3] Under these circumstances, the language of the agreement is unambiguous and Frontier has failed to demonstrate that it was entitled to express indemnification. See *Howell v. Ketchikan Pulp Co.*, 943 P.2d 1205, 1207 (Alaska 1997) (denying employee's claim for indemnity as third-party beneficiary of contract between employer and machine-repair company because contract did not contain language indicating intent to benefit employees); *Vargas v. N.Y.C. Transit Auth.*, 874 N.Y.S.2d 446, 449-50 (App. Div. 2009) (holding right to indemnity did not exist where parties were not in contractual privity and purchase order did not make contractor third-party beneficiary of contract between subcontractor and sub-subcontractor); *Ferguson v. Marshall Contractors, Inc.*, 707 A.2d 660, 662-63 (R.I. 1998) (per curiam) (concluding that general contractor's claim for indemnification from labor subcontractor failed because it had no direct agreement and agreement between labor and steel subcontractors did not contain intent to benefit general contractor).

¶ 22. ▮ On appeal, Frontier argues that the court erred in converting Turner's motion to dismiss into one for summary judgment because it did not have an opportunity to respond and demonstrate that· the parties intended to benefit Frontier. Although the court should have provided notice to the parties prior to converting the motion, Frontier has failed to demonstrate that it was prejudiced by this failure. See *Fitzgerald v. Congleton*, 155

---

[3] On appeal, Frontier relies on *Tom Brown Contracting, Inc. v. Fishman*, 658 S.E.2d 140 (Ga. Ct. App. 2008), in support of its argument that the purchase order intended to benefit the customer ultimately purchasing the switch. In *Tom Brown*, a flooring supplier had a contract with an accounting firm to hold customer deposits until the flooring supplier shipped the materials. When a customer paid the deposit but failed to receive the proper materials, it sued the accounting firm for return of its deposit. The court concluded that the contract between the supplier and the accounting firm expressed an intent to benefit the eventual consumer by imposing on the accounting firm the obligation to hold the money until the materials were shipped. *Id.* at 144. *Tom Brown* is distinguishable because here there is no similar provision in the contract between Turner and Graybar that even references the ultimate customer, let alone sets forth obligations of Turner to the ultimate customer. As such, unlike *Tom Brown*, the purchase-and-sale agreement contains no indication that its terms are meant to benefit the ultimate customer of the goods.

Vt. 283, 293-94, 583 A.2d 595, 601 (1990) (concluding that court's failure to give parties advance notice of conversion of motion to dismiss to motion for summary judgment did not result in reversible error where court subsequently granted party opportunity to respond).

¶ 23. First, although the court indicated that it was converting the motion to dismiss into one for summary judgment, the court did not indicate that it considered anything outside of the parties' pleadings in deciding the express-indemnity issue. The determination was made as a matter of law based on the pleadings. In addition, we conclude that the language of the contract here demonstrates unambiguously that the parties did not intend to benefit Frontier as a third-party beneficiary. Where a contractual indemnity clause is unambiguous, there is no need to look at facts beyond the actual writing. *State v. Prison Health Servs., Inc.*, 2013 VT 119, ¶ 9, 195 Vt. 360, 88 A.3d 414. Because there was no factual question to resolve, Frontier was not prejudiced by the lack of an opportunity to submit further factual information on the parties' intent.

¶ 24. Further, although Frontier did not initially have a formal opportunity to respond, Frontier subsequently had an opportunity to provide additional information to the court when it filed its motion to reconsider. Indeed, with that motion Frontier submitted an email from a Stantec employee inquiring of Turner about aspects of the switch in support of Frontier's argument that Turner knew about the intended use of the switch. Therefore, Frontier had a chance to respond with additional information. As explained above, this information does not alter the terms of the purchase-and-sale agreement, which unambiguously does not confer on Frontier any rights as a third-party beneficiary.

### III. Motions

¶ 25. Finally, we address two pending motions filed by the parties in this Court, both concerning the proper scope of the record on appeal. Frontier moved to strike portions of the appellees' briefs filed by Stantec, Graybar, and Turner, and the supplemental printed case filed by Stantec, claiming that they contained references to matters not properly part of the record on appeal, in particular, references to events that occurred after the decisions on appeal were issued, including facts about the trial.

Stantec, Graybar, and Turner opposed the motion, arguing that the facts related to the proceedings following the court's ruling were part of the record on appeal. See V.R.A.P. 10(a) (defining record on appeal). Insofar as it was not necessary for this Court to consider any of the facts subsequent to the ruling on the motion for summary judgment, including facts related to the jury trial and verdict, the motion is denied as moot.

¶ 26. The second unresolved motion was filed by Stantec following oral argument. Stantec moved for permission to direct the Court's attention to sections of its supplemental printed case in response to statements made by Frontier in rebuttal argument about the scope of Stantec's contracted work. Frontier opposed the motion, arguing that portions of the supplemental printed case were not before the trial court at the time the summary judgment motions were considered.

¶ 27. A review of the record reveals that the references Stantec makes are all in exhibits that were attached to its statement of undisputed facts submitted to the trial court in support of its motion for summary judgment. Because these materials were part of its summary judgment filings, they are undisputedly part of the record on appeal, and Stantec's motion for leave to direct the Court to these portions of its supplemental printed case is granted.

*Affirmed.*