EATON, J.
¶ 1. The State appeals a decision of the Vermont Labor Relations Board interpreting a collective bargaining agreement between the State and the Vermont State Employees' Association (VSEA). The question at issue is whether a change made to the agreement's family-leave provisions in 1999 limited an employee's right to use more than six weeks of accrued, paid sick leave while on family leave because of the employee's own serious illness. The Board found that, although the agreement itself was ambiguous, extrinsic evidence showed that the parties did not intend to limit the use of sick leave. The State argues on appeal that the contract is not ambiguous *46 and that the limitation on use of sick leave applies. We affirm.
I. Background
¶ 2. Grievant, Kobe Kelley, worked for thirteen years as a surveyor for the Vermont Agency of Transportation and is now retired. About a year before his retirement, he fractured his knee while on vacation. As a result, he took a seven-week leave from work. At the beginning of this period, Kelley was placed on unpaid family leave by his supervisor, under Article 35 of the collective bargaining agreement negotiated between the State and VSEA for the Non-Management Unit. For the first six weeks of this family leave, Kelley was allowed to make use of his accrued sick leave in order to continue to receive pay, but for the last week he was required to use paid annual leave that he had accrued instead. This was pursuant to the State's interpretation of the provisions of Article 35. VSEA filed a grievance on behalf of Kelley, arguing that under a different provision of the collective bargaining agreement, Article 31, Kelley had the right to use his sick leave during this final week in addition to the initial six weeks.
¶ 3. The classification of paid leave in these circumstances matters to both employees and the State because while employees are not compensated for their accrued sick leave when they leave their jobs or retire, they do receive compensation at that point for other forms of accrued leave-including the annual leave that Kelley was forced to use. The requirement to use annual leave rather than sick leave during the final week of Kelley's seven weeks away from work therefore reduced both an accrued liability for the State and future accrued benefits for Kelley. Counsel for VSEA stated at oral argument before this Court that there are currently between fifty and one hundred other state employees with grievances turning on this question.
¶ 4. The correct classification of paid leave in this situation depends on the relationship between the relevant two articles of the collective bargaining agreement: Article 31, entitled "Sick Leave," and Article 35, entitled "Parental Leave/Family Leave." Article 31 provides that a classified employee "who cannot work due to illness or injury" may use "earned sick leave credits." Such a provision has been part of the collective bargaining agreements between the State and VSEA since 1976. The Article does not contain any limitation on how or when credits may be used.
¶ 5. Article 35 is more complex. The core provision is found in Article 35(5)(a), which provides that family leave shall be granted "[i]n the case of serious illness of an employee or of a member of the employee's immediate family." Article 35(5)(b) then lays out an exception to the general rule that family leave is unpaid. While on family leave, an employee may choose to simultaneously "use up to six (6) weeks of any accrued paid leave, including, but not limited to, sick leave, annual leave and personal leave." After six weeks, however, "employees may use only the following accrued paid leaves in the following order: compensatory time, personal time, and annual leave." This latter provision is referred to as "the cascade." Once the twelve weeks of family leave are exhausted, all types of remaining accrued leave may again be applied freely.
¶ 6. Article 35 was added to the agreement in response to Vermont's 1989 Parental and Family Leave Act, 21 V.S.A. §§ 470 - 474, and its 1994 federal counterpart, the Family Medical Leave Act, 29 U.S.C. §§ 2601 - 2654. Both statutes guarantee qualifying employees twelve weeks of unpaid leave for family or parental care *47 within a twelve-month period, with conditions. Notably, the Vermont statute gives employees the right to use accrued paid leave during family leave, but only for a period "not to exceed six weeks." 21 V.S.A. § 472(b). Both statutes also contain explicit statements that they do not diminish any more generous rights guaranteed under collective bargaining agreements. 21 V.S.A. § 472(g); 29 U.S.C. § 2652(a). Article 35(1) of the collective bargaining agreement likewise includes the following nonwaiver provision: "The following provisions integrate the basic requirements of the statutes and this collective bargaining agreement ... but do not create a waiver by the State or by the employees of other rights and/or obligations under this Agreement."
¶ 7. At the Board's hearing, VSEA argued that the State could not force Kelley to use annual leave, given that he enjoyed an unrestricted right to use accrued sick leave under Article 31. The State argued in reply that the language of the contract was clear and unambiguous: the "cascade" provision of Article 35(5)(b) applied whenever an employee requested leave for a serious injury or illness, including his or her own, with this limitation of the use of sick leave in a specific circumstance superseding the general guarantee in Article 31.
¶ 8. The Board decided that the contract itself was ambiguous and therefore turned to extrinsic evidence to interpret it. It concluded that the parties to the 1999 negotiations did not intend the addition of Article 35 to diminish the rights of employees to use accrued sick leave for their own serious illness. It also found that, although the State's Department of Human Resources had advised state agencies to apply the "cascade" provision to employees taking off time for their own serious illness after the 1999 negotiations, the provision was not known to have been applied to employees in that situation until 2014. The State's own past practice thus did not suggest that it had seen itself as winning a concession in the 1999 negotiation. On these bases, the Board sided with VSEA's interpretation and sustained Kelley's grievance.
¶ 9. On appeal, the State again contends that the contract is not ambiguous: the "cascade" provision of Article 35 contains no exemptions and therefore governs whenever an employee is off work because of a "serious illness," whether their own or that of a family member. The State asserts there is no conflict between Articles 31 and 35 because the "cascade" provision "provides a framework" for implementing the general guarantee of sick leave in Article 31 in cases specifically involving "serious" illness. The State also argues that, even if the agreement is ambiguous, the evidence of bargaining history does not suggest that the "cascade" provision includes an implied exemption for when an employee is on family leave for their own serious illness. Nor, they contend, can past practice alter the meaning of the contract.
¶ 10. In response, VSEA argues that the Board's finding in favor of Kelley is in fact supported by the "clear and unambiguous language of the agreement," because the nonwaiver provision in Article 35(1) protects an unrestricted right to sick leave guaranteed by Article 31. VSEA claims employees taking leave for their own serious illness may choose whether or not to invoke their family leave rights under Article 35. If they do so, then their use of sick leave is capped by the "cascade." If they do not invoke their Article 35 rights, then they remain solely under Article 31 and their use of accrued sick leave is unrestricted, although any time taken off will still count against the twelve-week limit on family leave if they choose to invoke their family leave rights at a later point. Although *48 VSEA denies that the contract is ambiguous, it agrees with the Board's conclusion that extrinsic evidence shows that Article 35 was not intended to diminish employees' ability to use sick leave. VSEA thus agrees with the Board's ruling in favor of Kelley, but arrives at it by a somewhat different route. At oral argument, VSEA further conceded that their theory by which employees have a choice between the Article 31 and Article 35 regimes was not part of the Board's holding below.
II. Standard of Review
¶ 11. In general, whether a given contract term is ambiguous is a question of law that we review de novo. Trs. of Net Realty Holding Tr. v. AVCO Fin. Servs. of Barre, Inc., 144 Vt. 243, 248, 476 A.2d 530, 533 (1984). But if the contract is ambiguous, then the question of what the parties originally intended is a question for the trier of fact, whose conclusions we review only for clear error. City of Newport v. Vill. of Derby Ctr., 2014 VT 108, ¶ 6, 197 Vt. 560, 109 A.3d 412.
¶ 12. In this situation, moreover, we review with an even lighter touch than in a typical contract dispute. Because the construction of terms in collective bargaining agreements is within the special expertise of the Board, we review the Board's interpretation of these agreements "with great deference." In re West, 165 Vt. 445, 448, 685 A.2d 1099, 1102 (1996). If there is factual support for the Board's conclusion, this Court will leave it undisturbed. In re VSEA, 164 Vt. 214, 216, 666 A.2d 1182, 1183 (1995).
III. Analysis
¶ 13. The question before us is: does the collective bargaining agreement give employees an unrestricted right to use accrued, paid sick leave for a serious illness, or is such use subject to the six-week limit in the "cascade" provision? If the agreement is ambiguous on this point, what did the parties intend? The State argues on appeal that, under the plain language of the agreement, the "cascade" applies, and that in any case this is what the parties originally agreed to during the bargaining process. We do not find the State's argument persuasive. We agree with the Board that the contract is ambiguous and defer to its reasonable determination that the agreement was originally intended to protect employees' unrestricted right to use sick leave, unaffected by the "cascade."
¶ 14. A collective bargaining agreement must be interpreted like any other contract. Vt. State Colls. Faculty Fed'n v. Vt. State Colls., 151 Vt. 457, 461, 561 A.2d 417, 420 (1989). When a contract is not ambiguous, its provisions will be enforced in their "plain, ordinary and popular sense." Cheever v. Albro, 138 Vt. 566, 569, 421 A.2d 1287, 1289 (1980). A contract is ambiguous only if "reasonable people could differ as to its interpretation." Isbrandtsen v. N. Branch Corp., 150 Vt. 575, 577, 556 A.2d 81, 83 (1988). Mere awkward wording or the simple fact that a dispute has arisen are not enough. Id. at 580-81, 556 A.2d at 85. Although both parties contend on appeal that the collective bargaining agreement is clear, we agree with the Board that it is in fact genuinely ambiguous because there is more than one reasonable interpretation of the relationship between Article 31 and Article 35.
¶ 15. Neither of the Articles at issue is unclear when read in isolation, but when taken together they seem to conflict. Article 31, which states simply that "use of earned sick leave credits shall be authorized ... for an employee who is absent from work and unable to perform his or her duties because of illness [or] injury,"
*49 appears to create an unrestricted right to use accrued sick leave credits. Article 35(5)(b), meanwhile, states:
(b) During the Family Leave, at the employee's option the employee may use up to six (6) weeks of any accrued paid leave, including, but not limited to, sick leave, annual leave and personal leave. Thereafter, employees may use only the following accrued paid leaves in the following order: compensatory time, personal time and annual leave.
This language appears to limit the use of sick leave during family leave to six weeks, in conflict with Article 31. Since Article 35(5)(a) states that "Family Leave shall be granted" for the "serious illness of an employee," this limitation to the use of sick leave would apply whenever the employee is off work for a serious illness. The right to use of sick leave created by Article 31 would not be general and unrestricted but would in fact apply only in cases when an employee is off work for a nonserious illness (when the use of sick leave for over six weeks would be unlikely to occur).
¶ 16. When interpreting a collective bargaining agreement, like any other contract, we attempt to "read the agreement in its entirety, so that the parts form a harmonious whole." West, 165 Vt. at 450, 685 A.2d at 1103. Here there are at least two reasonable ways to read Articles 31 and 35 together in such a way as to render them in harmony with one another. One way, advocated by the State, is to read Article 35 as creating an implementation framework for the more general rule found in Article 31. Under this view, employees have the unrestricted right to use accrued sick leave for their own illness-unless the illness is "serious." If such is the case, then the leave must be designated as family leave under Article 35(5)(a), and the concurrent use of paid sick leave is capped at six weeks, after which employees may use only compensatory time, personal time, and annual leave, in that order. It was under this theory that Kelley was forced to take annual leave during his seventh week off work.
¶ 17. The second way to reconcile the two articles is to view Article 35(5)(b)'s restriction on the use of paid sick leave during family leave as applying only in cases where the employee takes family leave to care for a seriously ill family member, as opposed to for their own serious illness. Although this limitation on the restriction is not explicitly stated in Article 35, it is implied by provisions elsewhere: Article 31, which creates sick leave, contains no restriction on its use for an employee's own illness or injury, while the nonwaiver provision in Article 35(1) affirmatively states that Article 35 does "not create a waiver by the State or by the employees of other rights and/or obligations under this Agreement." On this reading, Kelley was on family leave under Article 35 and yet still enjoyed his unrestricted right to use sick leave under Article 31. He therefore should have been allowed to continue to use his accrued sick leave during his seventh week off work. This is the reading of the collective bargaining agreement that we take the Board to have followed in ruling for Kelley: employees with a serious illness fall under both Articles, although they may elect not to use any of their sick leave credits.[1]
*50 ¶ 18. Since we agree with the Board that the collective bargaining agreement is ambiguous, we now review the Board's determination of which reading best reflects the true intentions of the parties. To construe an ambiguous contract, the trier of fact may turn to extrinsic evidence. Trs. of Net Realty Holding Tr., 144 Vt. at 249, 476 A.2d at 533. This is what the Board did below.
¶ 19. The main form of extrinsic evidence that the Board looked to related to the negotiations in 1999 that led to the inclusion of Article 35 in the collective bargaining agreement. There appears to have been no explicit discussion during the negotiations concerning whether Article 35 would diminish employees' unrestricted right to sick leave. Of particular significance to the Board, however, was a written statement made by negotiators for the State after they proposed new language for Article 35. This new language first introduced the nonwaiver provision in Article 35(1); this had been absent from the State's original proposed language at the beginning of the negotiations. According to the State, this new language, including the nonwaiver provision, was intended to make "clear that the granting of the leaves required by law does not diminish benefits which have previously been bargained for by the union and are included in the contracts." The Board reasonably saw this as suggesting that the State did not intend that the addition of Article 35 would diminish the existing rights of employees, which then undisputedly included an unrestricted right to use accrued sick leave.
¶ 20. The Board also looked to the evidence of past practice by the State in administering family leave and sick leave. It is true, as the State argues on appeal, that past practice cannot change the meaning of a contract; it may, however, "give meaning to, supplement, or qualify" the contract. Mongeon Bay Props., LLC v. Mallets [sic] Bay Homeowner's Ass'n, 2016 VT 64, ¶ 30, 202 Vt. 434, 149 A.3d 940. Still, a course of dealing between the parties "must be proved just like any other fact." Id.
¶ 21. The Board concluded that evidence of past practice was "more in support" of the position of Kelley and VSEA than that of the State's. Its significance seems more unclear to us. On the one hand, representatives of VSEA testified that they knew of no instance where the "cascade" provision was applied to limit an employee's use of sick leave for their own "serious illness" from 1999 until 2014. The State conceded that application of the "cascade" provision had been "inconsistent," and could cite no instance of its agencies actually having applied it during that period-suggesting that the "cascade" provision had in fact been consistently not applied. On the other hand, the Board also found that the State's Department of Human Resources did "advise" state agencies after the 1999 negotiations to apply the "cascade" provision in cases of leave granted for an employee's own serious illness. The latter fact undermines the value of the nonapplication of the "cascade" provision as evidence for the State's original understanding of the contract. We conclude that consideration of past practice does not lend clear support to either side.
¶ 22. Still, the Board's examination was thorough, and its conclusion was reasonable given the text of the contract and the evidence from the 1999 negotiations. The most decisive consideration in favor of its conclusion is the simple combination of the following three facts. First, it is undisputed that before 1999 employees under the collective bargaining agreement enjoyed unrestricted use of their sick leave credits.
*51 Second, Article 31, which granted this unrestricted use, was not changed in the 1999 negotiations and contains no limitation on an employee's use of accrued sick time resulting from his or her own injury whether for a serious illness or otherwise. Third, Article 35(1) includes the statement, proposed by the State, that "[t]he following provisions ... do not create a waiver ... by the employees of other rights and/or obligations under this Agreement." In light of these facts, the Board reasonably concluded that the unrestricted right remained unchanged.[2]
¶ 23. Given the analysis performed by the Board and the deferential standard with which we review their decisions, we see no reason to overturn the Board in this case. We hold that under this collective bargaining agreement employees who are placed on family leave because of their own serious illness enjoy an unrestricted right to make use of their accrued, paid sick leave credits, not subject to the limitations of Article 35(5)(b).
Affirmed.

This is distinct from the interpretation that the VSEA advocates for on appeal, according to which the agreement offers employees a choice between invoking their benefits under Article 31 and invoking those under Article 35. Because we do not think that on any reasonable reading employees can or must make this choice, the facts in the record concerning how Kelley was placed on family leave, his exchanges with his supervisor, and his understanding of the contractual provisions-all facts relating to the circumstances of his supposed choice-are not relevant here.

The State's position moreover has the strange result that the right of employees to use sick leave credits is more restricted when they are suffering from a serious illness, when they may need to use their sick leave the most, than a minor one.