NOTICE: This opinion is subject to motions for reargument under V.R.A.P. 40 as well as formal revision before publication in the Vermont Reports. Readers are requested to notify the Reporter of Decisions by email at: JUD.Reporter@vermont.gov or by mail at: Vermont Supreme Court, 109 State Street, Montpelier, Vermont 05609-0801, of any errors in order that corrections may be made before this opinion goes to press.

2023 VT 9

No. 22-AP-137

| | |
|---|---|
| In re Grievance of Marc Abbey et al. (State of Vermont, Appellant) | Supreme Court |
| | On Appeal from Labor Relations Board |
| | October Term, 2022 |

Robert Greemore, Acting Chair

Kelly Everhart, Vermont State Employees' Association, Montpelier, for Plaintiff-Appellee.

Susanne R. Young, Attorney General, and Alison L.T. Powers, Assistant Attorney General, Montpelier, for Defendant-Appellant.

PRESENT: Reiber, C.J., Eaton, Carroll, Cohen and Waples, JJ.

¶ 1. **COHEN, J.** The State of Vermont appeals from a decision of the Vermont Labor Relations Board sustaining a grievance filed by the Vermont State Employees' Association (VSEA) on behalf of several classified employees. The Board determined that the State violated the employees' collective bargaining agreement (CBA) when it appointed another employee to a vacant position before the application deadline for that position had expired. We conclude that the Board correctly interpreted the CBA and therefore affirm.

¶ 2. In May 2020, VSEA filed a grievance with the Board on behalf of fourteen correctional officers, alleging that the officers' employer, the Vermont Department of Corrections (DOC), had violated their CBA by appointing a correctional officer from a different facility into a vacant position that was posted to be filled using competitive procedures. After a hearing in April

2021, the Board issued a written decision containing the following findings, which are not in dispute.

¶ 3.    In February 2020, grievants were employed by DOC as correctional officers at Northern State Correctional Facility (NCSF) and were members of the Corrections Bargaining Unit.    Article 19(1) of the Corrections Bargaining Unit's CBA with the State, entitled "Vacancies/Promotion," provides:

> When management decides to fill a permanent, vacant bargaining unit position through competitive procedures, notice shall be posted for ten (10) workdays prior to the application deadline, statewide in the case of a state promotional or open competitive procedure, agency-wide when only an agency promotional procedure is being utilized.  If a change is made in the minimum qualifications after the announcement is posted, the new vacancy notice shall be posted for a period of five (5) workdays.

The rest of Article 19 provides how a competitive position is to be filled after it is posted. Employees on "RIF status"[1] get first priority, followed by lateral transfer applicants who meet certain criteria.  If the position is not filled by an employee in one of the first two categories, DOC must consider "all certified applicants."

¶ 4.    On February 7, 2020, DOC posted a Corrections Services Specialist I (CSSI) position at the Northern State Correctional Facility (NSCF) for competitive recruitment.  The deadline to apply for the position was February 23, 2020.  CSSI positions offer regular work schedules and do not require as much overtime as correctional officer positions.  For these reasons, they are desirable positions within a correctional facility.

¶ 5.    Grievants all applied or intended to apply for the CSSI position prior to the application deadline.  Another employee, Stephanie Moly, also applied for the position through the competitive process when it was posted.

---

[1]  The Court understands "RIF" to refer to the "Reduction in Force" article in the CBA, which was not included as part of the record below.

¶ 6.     Moly worked as a correctional officer at the Northeast Correctional Complex (NECC). In early February 2020, Moly's partner Benjamin Mallery was promoted to a supervisor position at NECC. This meant that he was in a supervisory position over Moly, which violated a nepotism waiver that Mallery and Moly had previously executed with DOC. On February 10, the superintendent of NECC contacted the Department of Human Resources to ask if Moly could "RIF" into the available CSSI position at NSCF. On February 13, a human resources administrator emailed a DOC facilities executive advising him of the nepotism waiver for Moly and Mallery that required DOC to attempt to create a separation between them. The administrator informed the facilities executive that the NSCF CSSI position satisfied the requirements of a comparable pay grade and position for Moly, that Moly was qualified for and had applied for the CSSI position, and that DOC could request an administrative appointment provided that Moly's existing corrections officer position at NECC was left vacant to be filled when she moved.

¶ 7.     It is undisputed that Moly's correctional officer position at NECC was not subject to a layoff pursuant to Article 65, "Reduction in Force," of the CBA. Neither Moly nor VSEA ever received an official notice of layoff of her position.

¶ 8.     On February 13, 2020, DOC and the Department of Human Resources approved Moly's administrative appointment into the CSSI position at NSCF. On February 14, the job posting was canceled. No competitive interviews were conducted for the position.

¶ 9.     Grievants argued to the Board that the State's appointment of Moly and cancellation of the vacancy posting before ten workdays had elapsed violated Article 19 of the CBA. They asked the Board to order DOC to post and fill the NSCF CSSI position pursuant to Article 19. The State responded that it had the right to administratively appoint Moly to a competitive posting pursuant to Article 66(1)(b) of the CBA.

¶ 10.    Article 66(1), entitled "Mandatory Reemployment Rights," begins by stating that "[a]n employee with permanent status who has received an official notice of layoff, and who is

about to be laid off under the Reduction in Force Article, shall have . . . mandatory reemployment rights to any vacant classified bargaining unit position when management intends to fill it, provided" that the position is at the same or lower pay grade, the employee meets the minimum qualifications, and the employee has expressed a willingness to take the position. Subsection (b) of Article 66(1) contains an exception to this rule:

> Notwithstanding subsection (a), above, management shall have the right to first fill vacant classified bargaining unit positions by promotion, demotion, or lateral transfer of classified employees from within the Department, so long as such actions produce a different vacant bargaining unit position which management intends to fill.

The State asserted that Article 66(1)(b) permitted it to fill a vacancy posted using competitive procedures by administrative appointment and to cancel the posting before ten workdays had elapsed.

¶ 11. The Board agreed with grievants that the State had breached Article 19 of the CBA. The Board concluded that because the State had decided to fill the vacant CSSI position through competitive procedures, it was required to adhere to the requirements of Article 19 and post the position for ten workdays. The Board disagreed with the State's argument that Article 66(1)(b) permitted the State to make an administrative appointment after choosing to use competitive procedures and posting the position under Article 19. The Board reasoned that Article 66 governed the reemployment rights of employees who had been laid off under the reduction-in-force provision of the CBA, and did not apply here because Moly was not subject to a layoff or reduction in force. The Board therefore ordered the State to comply with Article 19 and repost the CSSI position for ten workdays. The State appealed.

¶ 12. When reviewing a decision of the Vermont Labor Relations Board, "we defer to the Board's construction of the collective bargaining agreement, given the Board's expertise in that area." In re Jewett, 2009 VT 67, ¶ 25, 186 Vt. 160, 978 A.2d 470. Although our review is

4

deferential, it is guided by traditional principles of contract law.  In re Welch, 2020 VT 72, ¶ 11, 213 Vt. 92, 239 A.3d 235.  The agreement "must be construed, if possible, so as to give effect to every part, and from the parts to form a harmonious whole."  In re Vermont State Emps.' Ass'n. Inc., 139 Vt. 63, 65, 421 A.2d 1311, 1312 (1980) (quotation omitted).  If the language of the agreement is clear and unambiguous, its plain meaning will control.  In re West, 165 Vt. 445, 450, 685 A.2d 1099, 1103 (1996).  We will uphold the Board's conclusions if they are supported by the findings and will affirm its findings unless they are clearly erroneous.  Jewett, 2009 VT 67, ¶ 25.

¶ 13.    Applying these principles, we conclude that the Board's interpretation of the CBA was reasonable and correct.  When, as here, the State decides to fill a vacant bargaining unit position using competitive procedures, Article 19 unambiguously requires the State to post the position for ten workdays.  The only exception is if the minimum qualifications of the positions change, in which case the State is required to post the vacancy for five workdays.  After the position is posted, if there is no employee on "RIF status"—i.e., who has mandatory reemployment rights under Article 66(1)—who is eligible for the position, then the State is required to select the most senior qualified lateral transfer applicant.[2]  Otherwise, the State must consider all certified applicants.  The State failed to adhere to this procedure when it appointed an employee who did not have mandatory reemployment rights to the NSCF CSSI position before ten workdays had elapsed and canceled the competitive posting.

¶ 14.    The State asserts that it had the right to change its mind about using competitive procedures and to fill the competitive vacancy by administrative appointment.  It argues that Article 66(1)(b) permits it to make an administrative appointment to a competitive posting at any point in the process.

---

[2]  Although it is undisputed that Moly met the minimum qualifications for the NSCF CSSI position, there was no evidence presented regarding whether she was the most senior lateral transfer applicant.  It therefore is not clear that she would have been automatically entitled to the position if the State had followed the procedure set forth in Article 19.

5

¶ 15. As the Board correctly concluded, however, the language of Article 66 does not support the State's position. The first sentence of Article 66(1) makes clear that its provisions apply only when a permanent employee is being laid off. When that occurs, Article 66(1)(a) entitles the laid-off employee to take any vacant classified bargaining unit position that management intends to fill, provided certain criteria are met. Article 66(1)(b) gives management the right to first fill a vacant position by appointing a different classified employee, so long as that appointment creates a different open position, which the laid-off employee could presumably then take. Viewed in context, Article 66(1)(b) is plainly limited to a situation where an employee has mandatory reemployment rights due to a reduction in force but the State wishes to fill a particular vacancy with a different employee. That situation did not occur here. Moly was not subject to a reduction in force and never received a layoff notice. Accordingly, 66(1)(b) did not apply at all, and did not authorize the State to administratively appoint Moly to the NSCF CSSI position after it had been posted using competitive procedures.[3] The State does not identify any other provision in the CBA that would allow it to fill a competitive posting in this way.

¶ 16. The State argues that Article 66 is "always applicable" because there is almost always a classified employee who has received an official notice of layoff and could exercise reemployment rights. Accordingly, it asserts, it can rely on 66(1)(b) to make an administrative appointment at any time. But even assuming that there existed a classified employee in February 2020 who could have exercised reemployment rights to the NSCF CSSI position pursuant to Article 66(1)—an assertion unsupported by any evidence—that would not mean the State could administratively appoint a <u>different</u> employee into the position after posting it using competitive procedures. Article 66(1)(b) does not expressly or impliedly override Article 19's requirements for competitive postings. The State's interpretation would allow it to avoid following Article 19's

---

[3] The parties agree that the State could have opted at the outset to fill the vacancy by administrative appointment instead of using competitive procedures.

competitive posting requirements whenever it chose, depriving those requirements of legal force. "We assume that parties included contract provisions for a reason, and we will not embrace a construction of a contract that would render a provision meaningless." West, 165 Vt. at 450, 685 A.2d at 1103.

¶ 17. The State asserts that the Board incorrectly construed Article 66(1)(b) to mean that the only employees whom management can administratively appoint into vacant positions are those who have received notice of layoff. It contends the Board's interpretation is illogical because appointing a laid-off employee into a vacant position would not create another vacant position that management intended to fill, as 66(1)(b) requires. The State misunderstands the Board's decision and confuses the first and second parts of Article 66(1). The Board did not construe the provision in the manner that the State claims; it simply ruled that Article 66 did not apply at all in the situation presented by this case. Moreover, Article 66(1)(b)'s requirement of creating a new vacant position only applies when the State chooses to appoint someone other than the laid-off employee to the vacant position. If there is a vacancy, and the State appoints the laid-off employee to the vacancy pursuant to Article 66(1)(a), then there is no need to leave another position open. Ultimately, the State's arguments concerning the meaning of Article 66(1)(b) are beside the point because that article does not apply where, as here, the employee it appointed to the vacancy was not exercising mandatory reemployment rights.

¶ 18. The Board reasonably construed the plain language of the CBA to mean that when the State decides to use competitive procedures to fill a vacancy, it must follow the competitive process set forth in Article 19, which includes posting the position for ten workdays. The Board acknowledged that if the State wished to fill a position using administrative appointment, it could have chosen not to use the competitive procedure at all. What the State could not do is post a position using competitive procedures, then change its mind and fill the vacancy before the ten workdays elapsed with an employee who was not subject to a reduction in force.

7

¶ 19. The State argues that reversal is required because the Board's factual findings are clearly erroneous. The State claims that it "presented uncontested evidence" that it can administratively appoint employees whenever it chooses and that to administratively appoint an employee who received a notice of layoff would violate Article 66(1)(b). It claims that the Board improperly ignored this "evidence." The State's argument is meritless. The findings of fact that the State purports to challenge are actually the Board's interpretation of the terms of the CBA, that is, its legal conclusions. See Fact, Black's Law Dictionary, 11th ed. 2019 (defining "fact" as "[a]n actual or alleged event or circumstance, as distinguished from its legal effect, consequence, or interpretation"). The State's representative's testimony regarding his belief about what the contract allowed the State to do was not evidence—it was a legal opinion. It did not take precedence over the actual language of the contract. And because the terms of the CBA were unambiguous, the Board properly declined to consider other extrinsic evidence presented by the State. See Hemond v. Frontier Commc'ns of Am., Inc., 2015 VT 67, ¶ 20, 199 Vt. 272, 123 A.3d 1176 ("If [contract] language is unambiguous, there is no need to consider evidence outside of the writing.").

¶ 20. Finally, the State claims that the Board's decision means that the State can never change its mind about whether to fill a competitive position and must keep a posting open for the ten-day period even if it is filled by an employee exercising mandatory reemployment rights or if the State decides not to fill the position. The Board's decision cannot reasonably be read to address these scenarios and we disagree that its ruling will lead to the "absurd results" claimed by the State.[4] Nor did the Board improperly intrude on the State's management function in reaching its decision. Cf. In re Carnelli, 2020 VT 12, ¶ 14, 211 Vt. 522, 228 A.3d 990 (holding that Board

_____

[4] VSEA agreed at the hearing below that if the State posted a vacant position using competitive procedures but then decided not to fill that position at all, it could remove the posting before ten workdays had elapsed without violating Article 19.

8

overstepped its authority by substituting alternative minimum qualifications for classified position, because establishing minimum qualifications was within management power of State). The Board reasonably interpreted the CBA to mean that where, as here, the State chooses to fill a vacancy using competitive procedures and there is no employee who is entitled to the position under Article 66, the State must follow the procedure set forth in Article 19. The Board's interpretation is consistent with the plain language of the contract, gives effect to all parts of the agreement, and supports its conclusion that the State breached the CBA in this case.

Affirmed.

FOR THE COURT:

_____
Associate Justice

9